Twaddell, Jr., Appellant, *v.* Twaddell.

Argued November 20, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*J. B. Hannum, Jr.*, and with him *S. Edward Hanne-stad, D. Malcolm Hodge*, all of *Hannum, Hunter, 'Hannum & Hodge*, for appellant.

*Harold L. Ervin*, of *Lutz, Ervin, Reeser & Fronefield*, for appellee.

OPINION BY LINN, J., January 25, 1929:

A husband appeals from the dismissal of his libel in divorce. He alleged cruelty and indignities within the statute as amended June 28, 1923, P. L. 886. The parties were married in 1895; in January, 1925, he withdrew from the home. When married, the parties

had very little property; when he left, he was the owner of two farms of considerable value, lying between Philadelphia and Chester, purchased out of their savings. Six children survive, the oldest twenty-seven, the youngest thirteen (when the evidence was taken). The master recommended divorce. Exceptions were heard by the court in banc and, after an independent examination of the evidence, as is required (Nacrelli's Case, 87 Pa. Superior Ct. 162; 288 Pa. 1), the court concluded that libellant had not established his allegation.

It may be said that if the testimony of the libellant were accepted and that offered against him were rejected, he would be entitled to a divorce, but in many essentials his evidence is not corroborated while respondent's is; the weight of the evidence is with her. Our consideration of the record, in the light of the applicable rule of law, has led us to the same conclusion reached by the court below. We cannot close our eyes to the fact that for thirty years the parties lived together, jointly sharing in the work and responsibility incident to the successful operation of a farm and dairy, and attained substantial material prosperity by much self-denial and frugality. Two of the children received education sufficient to enable them to obtain and fill positions of some responsibility. The oldest child, a school teacher, was not called to testify, (a witness stating that she was "a nervous wreck from his [libellant's] carrying on;") the four who were called (the youngest was not) supported the evidence of their mother against libellant; their evidence convinces us that their lack of sympathy with their father is not the result merely of his failure to maintain discipline among his children, but confirms the fact, apparent in the testimony, that he was ill-tempered and unsympathetic in his attitude to the children through a long period of years. Unfortunately this antipathy culminated in the assault on libellant by one

of the children, which resulted in libellant's leaving his home on or about January 23, 1925, and soon thereafter selling his cattle, farm products and implements; we are convinced by the record that his general dissatisfaction with his family and not any conduct of his wife justifying a divorce, was the cause of his departure.

The rule of law to be applied is well settled; it is only in cases clearly within the statute that a divorce may be granted; for that reason (when there is no jury trial) the evidence must bear the scrutiny of a master, and then of the common pleas, and then of this court, if an appeal be taken. "In a proceeding dissolving a marriage contract, the case is not to be disposed of on a doubtful balance of the evidence nor upon unsubstantial inferences. There must be a presentation of a clear and satisfactory case on which the determination of the court may be confidently rested, and one who would win a case of this character must be clear of everything which is charged as a cause of separation against the opposite party; Edmond's Appeal, 57 Pa. 232; Angier v. Angier, 63 Pa. 450. A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out." Rommel v. Rommel, 87 Pa. Superior Ct. 513; see also Greims v. Greims, 87 Pa. Superior Ct. 312, 317; Lomax v. Lomax, 87 Pa. Superior Ct. 543; Stewart v. Stewart, 88 Pa. Superior Ct. 1; Headland v. Headland, 88 Pa. Superior Ct. 417; Goldberg v. Goldberg, 89 Pa. Superior Ct. 319; Nacrelli v. Nacrelli, supra.

Concerning the altercation which preceded his leaving home, there is the testimony of the libellant on one side and of the wife and two children on the other; all agree that it was preceded by libellant's request

for a memorandum or list of groceries that, apparently in accordance with his custom, he would purchase when he went to town. According to the libellant's account, he asked the respondent for the list, when the daughter, Lydia, aged 15, made some impudent remark about it, whereupon he threatened to "spank" her; he also said "I went to paddle her." She (in his words) "doubled dared" him and threw a cup at him, which struck him on the arm, while at the same time his wife and son, Walter, aged 19, attacked him, the son using a piece of board "cut like a bat" which he had "ready there for that purpose." Respondent and the children give a different account: briefly, it is that libellant asked the daughter "to make out the memorandum" and that in response to the daughter's statement that she could not do so because she did not know what was needed in the house, the libellant pursued her around the table at which they had been having breakfast and said that "he would lay [her] out." Lydia says "he chased me around the table and I threw it [a cup] at him." The son, who was eating breakfast when the trouble began, stepped out on the porch, got a piece of board, returned with it and attacked his father who was still pursuing the daughter; the father knocked down the son, but in the encounter, the son struck the father with the board and fractured several ribs. Meanwhile, respondent was calling to the son not to strike libellant, who in the altercation, "slapped her and knocked her glasses off."

That such a quarrel could take place is, of course, evidence of the unfortunate relations existing between father and children, but it is no cause for divorce from respondent, however unsympathetic she and he may have been. There is evidence of unkind treatment by the father of some of the children extending over a long period of years; much of it libellant denied in rebuttal, though some remained uncontradicted. Sarah, aged 21, employed in the Marcus Hook Na-

tional Bank, testified that her mother could not attend her graduation exercises at the Chester high school because she "didn't have respectable clothes to wear;" and that her father was not invited "because when I gave him an invitation to the junior reception he said he'd be a damn fool to go, so I didn't give him any commencement invitation." The oldest son, Howard, was taken out of school at 16 and was put to work on the farm; differences with his father about his work and, perhaps his wages, led to his leaving and, after he became of age, farming on his own account. Libellant testified that respondent encouraged all the children in their hostility to him; respondent and the children who testified deny it. Sarah testified to an attack by libellant on the son, Walter, and that libellant offered her "a machine if I would stick with him." Walter testified that "many a time we were told [by libellant] to get out if we had no place to go but the road." Without reciting all the evidence concerning the strained relations existing between libellant and his children it is sufficient to say that we accept the fact as established. There is nothing to convince us that respondent encouraged or was responsible for the hostility existing between the libellant and his children.

There is evidence that some of the children purchased furniture and other things for the house and that respondent, in addition to the housework, performed farm work of all kinds, even taking farm products to market from time to time. While there is evidence of the libellant that respondent did not treat his relatives kindly, there is evidence that he cursed her and the children and her relatives. Incompatibility of temper undoubtedly exists, but that is not cause for divorce; McCommons v. McCommons, 85 Pa. Superior Ct. 323, 328. No good purpose can be served by rehearsing here all of the evidence in the rather

voluminous record; we have considered it and are convinced that libellant has not made out the **clear** case required by the law of Pennsylvania. The decree is affirmed at the costs of libellant.