Esenwein *v.* Esenwein, Appellant.

Argued May 4, 1932.

Before TREXLER, P. J., GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*J. R. Sheppard,* for appellant.

262

*T. D. McCloskey*, and with him *Fred C. Houston* and *William S. Doty*, for appellee.

OPINION BY TREXLER, P. J., July 14, 1932:

This is an action for divorce brought by the husband; the grounds alleged being cruel and barbarous treatment and indignities to the person.

The parties were married on November 22, 1899, and with some short absences on his part, lived together until November 1919. The subpoena was issued on May 26, 1920, the decree in favor of the libellant was not entered until February 6, 1932. Why libellant was so slow in pressing his suit is not explained. There are two children, a son aged 27 and a daughter aged 29. The libellant testified to various occurrences transpiring at intervals during 20 years of married life. As to the most serious of the occurrences, there is no corroboration, and the wife denies all instances of personal assaults or of threats. On one occasion, about 30 years ago, he avers she threw a cake of soap at him, and on another occasion tore up their marriage certificate, but both of these occurrences are denied by her, and if they were true, would not be sufficient grounds for a divorce. The charge that she tried to throw a flower pot at him she asserts is a bare fabrication. In 1904 he states she threatened to shoot him, and that she discharged a gun out of one of the windows. She denies the threat and she asserts her husband was not at home at the time, and gives an explanation of the discharge of the gun into the back yard. He complains that she did not perform the household work; that he had to do a good deal of the cooking. Her lack of ability to cook and to keep the house in order is denied but, if true, is certainly not a ground for divorce. He states that she did not treat his relatives with civility but her story is entirely different. He claims his health was affected by her course of conduct, but produced no medical testimony.

He has sought to bolster up his testimony by calling witnesses, most of whom are his relatives. What they depose does not amount to much. Some of them were in the home of the parties on a few occasions, and testified to occurrences which happened so long ago, that they disclaimed any definite recollection of details, but indulged in general statements which had no probative value. Ford v. Ford, 67 Pa. Superior Ct. 350.

The lower court assumes that whatever statement he made, whether corroborated or not, was true. We have, upon several occasions held, that the testimony of the husband, denied and contradicted by the wife, (as in this case) cannot be regarded as creating more than a doubtful balance of evidence. When such a situation occurs the libellant fails to make out a clear and satisfactory case. McGowan v. McGowan, 98 Pa. Superior Ct. 194; Twaddell v. Twaddell, 95 Pa. Superior Ct. 429; Dunlap v. Dunlap, 97 Pa. Superior Ct. 405.

These people did not get along well together, but incompatibility of temper is not a ground for divorce. Both seemed to lack common sense, and there was no spirit of accommodation. By a just deduction from the testimony we conclude that during the long intervals which separated the different occurrences that are set out by the libellant to support his cause, there was the normal life such as is usual with most married people. We may also call attention to the fact that in spite of the bad treatment, he claims he received, he twice left his wife and after short intervals returned to her. This would not bar his suit but it is a circumstance that may be taken into account in the consideration of his testimony. The indignities seem to have not been confined to him, for on one occasion when she came down to his office, the time of closing having arrived, the man, in charge, ordered her out. She desired to stay and he secured the services of a policeman and had her ejected, although the witness

testified there was no disturbance. It is not likely a subordinate would take upon himself the authority to eject the wife of one of the firm, unless he had been prejudiced against her by the employer and received authority so to do, and libellant admits that he had before this told the employee to watch her, when she came, to see that she carried no weapons, apparently an entirely unnecessary precaution. The incident throws light on his attitude toward his wife, and his willingness to create a situation which would humiliate her. Such action would naturally be provocative of retaliation on her part. But apart from what we have stated in this paragraph, the divorce should not be granted because, as stated above, the proofs submitted by the libellant do not come up to the required standard.

The decree is reversed and the record remitted to the court below with direction that the libel be dismissed. Costs to be paid by the libellant.