## Conrad v. Conrad, Appellant.

Submitted November 15, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John J. Haberstroh,* for appellant.

*Samuel H. Jubelirer,* for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1934:

Upon a review of the record in this divorce case for the purpose of reaching an independent judgment as required (Langeland v. Langeland, 108 Pa. Superior Ct. 375, 164 A. 816) in the absence of a jury trial, we are not persuaded that the decree awarding a divorce to the husband should be affirmed.

The libel was filed May 6, 1931, under the Divorce Law of May 2, 1929, P. L. 1237, and manifestly was intended to charge that respondent had: (1) by cruel and barbarous treatment endangered the life of libellant; and (2) offered such indignities to his person as to render his condition intolerable and life burdensome. These are separate and distinct grounds. The master recommended a decree upon both and the court below dismissed respondent's exceptions, adopted the master's recommendation, and entered the final decree from which respondent now appeals.

We find no evidence upon the record of cruel and barbarous treatment within the meaning of the statute, as interpreted in many appellate decisions;

namely, actual personal violence or the reasonable apprehension thereof, or such a course of treatment as endangers life or health and renders cohabitation unsafe: Auerbach v. Auerbach, 98 Pa. Superior Ct. 369; Koontz v. Koontz, 97 Ibid. 70. But, as stated in Sklan v. Sklan, 110 Pa. Superior Ct. 226, 168 A. 481, conduct and threats which may not amount to treatment endangering life are properly considered, in connection with other conduct, under a charge of indignities to the person.

Confining our consideration then to the second ground pleaded in the libel in this case, we emphatically direct attention to the case of Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350, affirming the judgment of this court, 105 Pa. Superior Ct. 261, 161 A. 425. In that case, Mr. Justice LINN thus summarized the principles of law which must be followed in weighing testimony offered for the purpose of sustaining this ground for divorce, and defined the kind of evidence necessary to support a decree.

" 'It is not of a single act that the law speaks in the clause under which this case falls; but of such a course of conduct or continued treatment as renders the [husband's] condition intolerable and [his] life burdensome ...... Never ought divorces to be easily obtained, for marriage is the most sacred of human relations, and should never be dissolved without clear proof of imperious reasons. ...... Indignities provoked by the complaining party are of course no ground of divorce unless when the retaliation is excessive, (citing cases). Our statute is a municipal regulation for the protection of the community as well as the wife' or husband: McDermott's App., 8 W. & S. 251, 256.

"In considering whether there is that 'clear and satisfactory evidence of the wrong which the law treats as justifying cause for a divorce ...... the court must be informed what the respondent has done; not what

witnesses may conclude, or what they may regard as the character of the conduct': Edmond's App., [57 Pa. 232]. General expressions 'are of no value unless accompanied by the actual facts on which these assertions are based. We are entitled, in the consideration of the case, to have the particulars as to the words spoken or the things done that constituted the cause of action alleged': Ford v. Ford, 67 Pa. Superior Ct. 350, 352; Bishop v. Bishop, 30 Pa. 412, 415.''

The application of these tests to the testimony in the case at bar requires, in our opinion, the reversal of the decree because libellant has failed to show such a course of conduct (followed by the specified result) as is contemplated by the statute; in other words, has not made out the clear and satisfactory case required.

The parties were married December 29, 1927, and separated March 9, 1931; respondent went to live in an apartment and libellant remained at the common home until the last of July, 1931. Each had been married previously; libellant was a widower with three children (one of whom was married) and respondent had been divorced from her first husband, by whom she had a daughter. Libellant was forty-nine and employed as a railroad block operator; respondent, thirty-eight, was engaged in teaching school. At the close of the school term in June, 1928, they began housekeeping at Portage, Cambria County. With them lived libellant's son, Edward, seventeen, and his daughter, Edith, twenty-two, and respondent's daughter Regina, twelve.

In the fall of that year they removed to Altoona where they had built a house in which respondent invested her entire savings of $2,100, as a ''down payment,'' and upon which there was a building and loan mortgage, carried by libellant for some time. By reason of his default in making payments, it was foreclosed and the property sold.

Early in their married life it became apparent that they were not compatible sexually and had but few inclinations or tastes in common.

Libellant's children were at an age, and had acquired habits, which led them to resent the presence and authority of a step-mother. Libellant was employed at night and obliged to sleep during the day; respondent had also had experience as a saleslady and preferred employment in stores, millinery and dress shops, to doing housework. During a considerable portion of the time they lived together she was so employed. This general situation, supplemented by religious differences, was not conducive to a peaceful home life. Friction and petty annoyances—such as piano playing, door slamming, and other unnecessary household noises, when libellant was sleeping—soon developed; in some instances respondent and her daughter were at fault in these matters, but none of them constituted indignities within the meaning of the statute.

Libellant was frequently obliged to do household work when respondent was employed all day, but respondent's absences at work seem to have been justified; libellant's purchases of clothing for her were extremely limited and she used her earnings for both personal and household expenses.

Libellant's testimony that respondent threatened him with bodily harm was denied by her and he failed to call the physician whom he named as having treated him for a nervous illness which he alleged was caused by her conduct. His daughter Edith was employed away from home at intervals, but his son Edward was a member of the family and the latter's frequent quarrels with respondent's young daughter added to the disturbances in the home but certainly did not furnish any ground for this proceeding. Edward's unjustifiable hostility toward respondent was so apparent in

his testimony that neither the master nor the court below believed his most serious reflection upon her conduct. At the instance of libellant, he had been watching and following respondent for a period of three months prior to the separation in an effort to obtain evidence which would support an application for divorce and the immediate occasion of the break between the parties was a quarrel between Edward and respondent.

Indeed, respondent asserted all through the proceedings that she and her husband would have had no difficulty in living a normal married life by themselves.

Practically the only indignity to his person testified to by libellant was: "She called me names, spit in my face and told me I was too damn yellow to hit her. She said if I had any damn guts at all I would get out, that the house belonged to her."

Respondent's version of this occurrence reads: "Q. He said you spit in his face and told him he was too damn yellow to hit you, is that correct? A. That was one day I got a letter from the mailman, he insisted to see it, I wouldn't let him see just because he insisted I wouldn't let him see it, I went down the cellar, he followed me down, threw me down on the cement and kicked me on the back, had Dr. Hudson. Q. Did you ever tell him if he had any damn guts at all he would get out that the house belonged to you? A. No, sir."

The record discloses that upon several occasions respondent addressed violent and abusive language to Edward during their quarrels and called libellant a liar.

However reprehensible respondent's conduct may have been during the altercation above mentioned, and assuming that it was without provocation, a single act of indignity is not a sufficient cause for divorce (Don-

204

nelly v. Donnelly, 76 Pa. Superior Ct. 92); the evidence must show repeated and measurably continuous indignities.

As stated in Esenwein v. Esenwein, supra, "lack of continuity is inconsistent with any course of conduct as it excludes the basic element of the definition."

Respondent undoubtedly behaved badly upon several occasions, but it is equally clear libellant was not free from blame.

Taking the whole case together, the record does not show a course of misconduct indicative of an insulting and contemptuous purpose and intent or of settled hate and estrangement.

The independent conclusion at which we have arrived, after an examination of this record in the light of the principles of law to which we have referred, is that libellant has failed to make out the clear case required for a decree.

The decree is reversed, at appellee's cost, and the record remitted with instructions to dismiss the libel.