## Stein *v.* Stein, Appellant.

Argued May 3, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Morris Zimmerman,* with him *Morris M. Freed,* for appellant.

*Clarence B. Nixon,* with him *Emily H. Wilson,* for appellee.

Opinion by James, J., October 2, 1935:

On October 2, 1933, Gustave Stein, libellant, filed a libel in divorce alleging cruel and barbarous treatment and such indignities to the person as to render the libellant's condition intolerable and life burdensome.

On March 9, 1934, a bill of particulars containing twenty-seven specifications was filed to which answer was filed. Hearings were had before RICHARDSON, J., who, on September 10, 1934, entered a decree in favor of the libellant on the ground of indignities to the person; from which decree, respondent has appealed.

Upon this appeal it becomes our duty to consider all the evidence and express our independent conclusion: Nacrelli v. Nacrelli, 288 Pa. 1, 136 A. 228; Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350, and as the testimony was taken in open court, the conclusion of the judge who heard witnesses will not be lightly disturbed upon appeal; but if upon examination of the record we are convinced that the court erred in granting the decree, we should not hesitate to do so. "Never ought divorces to be easily obtained, for marriage is the most sacred of human relations, and should never be dissolved without clear proof of imperious reasons......": Esenwein v. Esenwein, supra. "Like all other cases in equity, the applicant must be *rectus in curia;* have a good cause, and the respondent a bad one. This must always be the case where the divorce is resisted. The party who would win in such a contest must be clear of everything which is charged as a cause of separation against the opposite party": Angier v. Angier, 63 Pa. 450, 462. "In a proceeding dissolving a marriage contract, the case is not to be disposed of on a doubtful balance of the evidence nor upon unsubstantial inferences. There must be a presentation of a clear and satisfactory case on which the determination of the court may be confidently rested, and one who would win a case of this character must be clear of everything which is charged as a cause of separation against the opposite party; Edmond's Appeal, 57 Pa. 232; Angier v. Angier, 63 Pa. 450": Twaddell, Jr. v. Twaddell, 95 Pa. Superior Ct. 429, 432.

The libellant, aged thirty-nine years at date of hearing, and respondent (age not appearing), were married

on March 4, 1923, and have one child, Shirley, past ten years of age. After the marriage they went to live with libellant's aged parents. Libellant's father died in 1927, and the same year the family moved to a home, which had been purchased in the name of the husband and wife; but which libellant claimed had been purchased with his mother's money. Apparently their lives were without friction until August, 1930, when respondent's sister moved in for several weeks. From that time until the latter part of December, 1930, constant bickerings and quarrels arose between the libellant, his mother and respondent, until his mother left and did not return until August 30, 1932. Shortly after the mother left, title to the home was conveyed by the husband and wife to the mother since which time equity proceedings have been instituted by the wife to set aside the conveyance. On February 6, 1931, libellant filed a libel in divorce, which after an interview with the Rabbi was withdrawn. From that time until August 30, 1933, they occupied the same room, since which time they have occupied separate rooms and the husband has never since spoken to his wife. On September 25, 1933, libellant received notice to appear in non-support court and a hearing was held on October 4, 1933, two days after the present libel was filed. An order was made placing the custody of the child in the father, and an order of thirty dollars a month while wife remained at the house and forty-five dollars if she left. The parties continued to live at the home until January 25, 1934, when a serious altercation took place as a result of which libellant was indicted for assault and battery, but upon trial was acquitted with directions to pay the costs. On January 25, 1934, a new lock was placed on the door of the home by the mother-in-law and respondent was denied admission and has not returned since; being supported under the order of court.

An analysis of the twenty-seven items in the bill of

particulars and the testimony supporting them, indicates that libellant has included many matters which cannot be classified as indignities and as to such matters as would have warranted the divorce, the respondent has flatly denied. Without attempting to enumerate in detail, the bill of particulars charged respondent with having cursed the libellant, called him vile names, humiliated him in public places, struck him and knocked off his glasses, called in the police to his great embarrassment, annoyed him at his place of business, torn out the telephone wires, and treated their child in such a manner as to cause the libellant such worry and mental disturbance so as to interfere with his general health and occupation. Many of the items which were included in the bill of particulars occurred long after the filing of the libel in divorce. The libel was filed on October 2, 1933; subpoena served on November 3; respondent's rule for bill of particulars filed November 13, and the bill of particulars filed on March 9, 1934. As no amendment had been allowed to the original libel, the court should have considered the causes which had occurred prior to the date of the filing of the libel and restricted the introduction of testimony to such period; but in view of the fact that no objection has been raised either in the court below or upon this appeal to the introduction of this testimony, we shall treat it as if properly admitted.

We shall not narrate in detail the testimony which covers a record of 270 pages, in which libellant's testimony is flatly contradicted by the respondent. Assuming it to be true that in some measure libellant's testimony is corroborated, we find that respondent's testimony is in many respects materially corroborated. With the record in such state, and running through the entire testimony that the moving cause of all the controversy is the presence of libellant's mother in the home while at the same time libellant forbade the presence of respondent's mother and brothers and sisters, we are

of the opinion that libellant has not met the burden of proof required in a proceeding of this character.

The court in its opinion recognized this situation when it stated: "Certainly, if the testimony of the respondent and her witnesses is to be believed, the libellant's conduct on occasions was not praiseworthy, nor consistent with the character of a down-trodden husband." That the libellant was not without blame is further recognized by the court when it stated: "the court is of the opinion that, while there may be serious faults on the part of the husband, yet the credible testimony presented on his behalf justifies the granting of the petition of the libellant, and the entering of a decree on the ground of indignities to the person." What the serious faults of the husband are, the opinion does not state. We are not informed whether his sullen and discourteous treatment of the wife's friends and family; permitting his mother to continue to remain in the home, or whether the direct acts of humiliation upon his wife, are the serious faults on the part of the husband, which the record if believed established. The court in its opinion relies upon two circumstances as indicating respondent's testimony not credible. The first was "her statement that after the libellant's mother had left the home in December, 1930, she and the libellant 'got along very nice,' but the fact is that the husband filed a libel in divorce during the period of the mother's absence." This libel was not filed until after the wife had executed the deed to the home which, if libellant's testimony is to be believed, showed that the deed was voluntarily signed by the wife to adjust their differences. After the interview with the Rabbi, the libel was withdrawn, and outside of the controversy with respondent's brother the record contains no serious differences until the return of libellant's mother. We cannot see how this portion of her testimony indicates her testimony not credible. The other circumstance relied upon by the court was a charge in respondent's

answer that libellant " 'has suffered from malignant neurosis for twenty years and upwards,' which averment is wholly unsupported by her own testimony and was injected into the case solely for the purpose of humiliating the libellant." This averment is found in answer to the twentieth item of the bill of particulars and when respondent was asked whether the twentieth item was correct, replied: "A. I did not. In fact I loved my husband and I wanted to live with him. If it hadn't been for my mother-in-law constantly interfering with us, I would be living with him today." Further in her testimony she was asked: "Q. Mrs. Stein, do you know whether your husband suffered from nervousness and mental disturbance? A. Yes, he did. He suffered that way over the past eighteen or twenty years. He always told me he had gone to doctors." Although the record did not warrant any finding that libellant was suffering from malignant neurosis, we fail to see that the use of that term as to her husband's physical condition was used solely for the purpose of humiliating him and of sufficient character to overcome the balances of the testimony.

If as stated by the court below, and which the record fully establishes, that this libellant may have serious faults, we are convinced that he has not established by a clear preponderance of the testimony that he is entitled to the decree. For a spouse to maintain within the home a mother who has been a constant source of irritation and quarrels, establishes to our satisfaction that his conduct has precipitated the domestic troubles. His paramount duty and obligation was to maintain a home free from disturbing influences.

The decree is reversed and the record remitted with direction to enter a decree dismissing the libel.