Romano *v.* Romano, Appellant.

410

Argued May 3, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Louis H. Artuso,* for appellant.

*Peter J. Surma* and *Cyrus A. Davis,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

On May 27, 1936 libellant filed his libel in divorce alleging cruel and barbarous treatment and indignities to the person. Hearings were held before a judge of the court of common pleas, who granted a divorce on the ground of indignities. He concluded his opinion as follows: "From the appearance of the parties we are

persuaded respondent was guilty of the charges made against her and that libellant is entitled to the decree of divorce......"

On an appeal in a divorce proceeding (when there is no jury trial) we have repeatedly held it is the duty of this court to make a careful examination of the evidence and reach our independent conclusion that the cause of divorce has been satisfactorily established. The findings of a trial judge must be duly considered as he has the advantage of hearing and seeing the witnesses, still the libellant must present a case on which the determination of this court may be confidently rested. A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out: *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 499, 171 A. 419. We have no doubt that the confusion and contradictions which appear in the testimony were due to the fact that it was necessary to use an interpreter, but we must take this record as we find it.

Libellant and respondent were married on June 23, 1930, both having been previously married, and children born of each marriage. Libellant was divorced from his first wife and was supporting his children under a court order; respondent's former husband was dead. It is difficult to determine when respondent finally left her husband as libellant first testified that she left January 1, 1936, while some of the acts of cruelty were fixed in the home as of February, March and April, 1936, and following one of the instances they slept together and respondent remained for two or three days. He further testified that she returned in the month of April at his request and remained for less than a week.

Libellant testified that his wife had placed petroleum in his food and several times had placed a deleterious

substance, which he characterized as poison, in his wine making him sick and she refused to get a doctor for him when he was in this condition; that she threw hot coffee in his face and burned him and said she liked to burn him; that she knocked a couple of his teeth out with a soup ladle and struck him on the head with a brick when he was in bed; that she cut his coat with a butcher knife saying she wanted to kill him, and another time threatened him with a butcher knife; that on various occasions she called him vile epithets, and was jealous and complained of his visits to his children; that she refused to cook or wash his clothes, and there always was a stench in the house because she did not keep it clean.

The only testimony by way of corroboration was that of Mrs. Marie Marchese, a neighbor, who testified that libellant had shoveled some coal for her for which she gave him a basket of peaches she had picked from a tree in her yard, and when libellant arrived home, he and his wife started fighting and she went near the door of their home and saw the wife run upstairs after the husband with a butcher knife threatening to kill him.

Respondent specifically denied and contradicted the testimony of libellant as to each of the acts charged by him. She testified that her husband was always complaining of being sick on account of drinking, none of which occurred in the home; that libellant would fight with her, and on the occasion when Mrs. Marchese appeared at her home, she had a knife in her hand which she had just taken from her husband, who had threatened to kill her; and that her husband was always threatening her with a razor and a butcher knife.

It is doubtful whether the testimony of Mrs. Marchese corroborates libellant, as she fixes the time of the butcher knife incident as September or October, 1935,

while he testified it occurred in February, 1936. As to the incident when poison and petroleum were placed in his food, his children, then living with him, had warned him not to eat the food because "Mama put petroleum in the food." None of his children were called. As to the charge that hot coffee was thrown in his face, he first testified he did see and later he did not see a doctor; that it occurred in November, 1934, later in 1935, and later in April, 1936; that he visited the doctor for eye treatment and later from drinking the wine—this doctor was not called. He testified he was taken sick on three occasions from drinking wine in which his wife had placed something, yet at no time did he ever see her place the substance in the wine. When he was struck in bed with a brick, he called the neighbors, and later two policemen and a doctor came, none of whom were called. As affecting his credibility, the record further presents a strange circumstance in that he testified he did not know, nor had ever asked, what had become of respondent's first husband, while she testified he had formerly boarded with her and the present marriage took place two months after the death of her first husband.

The testimony which might be classified as indignities, such as the calling of vile epithets, respondent's jealous disposition, her refusal to cook for libellant or wash his clothes, etc., was uncorroborated, and was so general and indefinite as, in our opinion, does not establish the ground of indignities. In connection with this testimony, the court could consider the testimony relating to the charge of cruelty: *Conrad v. Conrad,* 112 Pa. Superior Ct. 198, 170 A. 342. But again libellant failed to produce, or account for his failure to produce, witnesses who were present when the various acts occurred. Considering all of the testimony, libellant has not presented such clear and satisfactory proof as justifies the entry of the decree. Libellant's testi-

414

mony, denied and contradicted by the wife, cannot be regarded as creating more than a doubtful balance of the evidence, which, we have held, fails to establish a clear and satisfactory case: *Esenwein v. Esenwein,* 105 Pa. Superior Ct. 261, 161 A. 425; 312 Pa. 77, 167 A. 350.

Decree reversed.