## Scott, Appellant, *v.* Scott.

Argued May 4, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*Wm. J. Graham,* with him *Clyde P. Bailey,* for appellant.

*Linus P. McGuiness,* for appellee.

OPINION BY HIRT, J., June 27, 1939:

Cruel and barbarous treatment and indignities to the person are the charges in this action in divorce. The case was tried before a judge, and the court found that there had not been proven by competent testimony any one act or series of acts of the respondent justifying a decree of divorce on either ground. Accordingly a divorce was refused and the libel dismissed. After a thorough scrutiny of all of the testimony we agree with this conclusion.

It is admitted that within seven months after the marriage on October 1, 1913, dissension arose and the libellant left the respondent and they lived apart for a period of two years. A reconciliation followed, lasting for only six weeks, when the parties again separated

for four months. They then lived together more or less continuously until 1920, when the final separation occurred. Wherever they lived they occupied for the most part a single furnished room, except for a short period when the wife provided a four room apartment out of a small inheritance which she had received. Libellant never bought furniture nor provided a suitable home for his family, and there is a dispute as to whether he ever offered to do either. Two children were born, a daughter now twenty-three years old, and a son now twenty. The respondent, since 1920, has had the sole custody of the children and the responsibility of raising them; they were delicate children and needed special attention and care. Except for short periods when the son was receiving treatment at the sanitarium at Cresson, and the daughter was at the Home of the Good Shepard in Pittsburgh, both children lived with their mother or were placed by her in boarding homes at her expense. On the complaint of the wife the courts of Allegheny County, as early as 1914, made an order on the libellant for her support and these orders have continued in varying amount. Under the present order libellant has been paying his wife $50 a month.

Libellant's testimony amounts to this: In 1914, at a time when they were living apart, respondent came to his rooms, called him a vile name and threw a vase at him. Again in the same year, while he was walking along the B. & O. tracks, a short cut to his home, his wife suddenly confronted him, swore at him, struck him in the face, and tore his shirt and underclothing, following which they were both arrested at respondent's request but were discharged by the magistrate the next day. After this hearing respondent followed him home, threw rocks at him and picketed his house for three hours with rocks in her hand. As to the conduct of the wife following the hearing, he is corroborated by his neighbor. In the same year, while they were living together, respondent on one occasion kicked him so

severely that in pain he rolled down the stairs; she also threw a bread knife at him and threatened to kill him if he came back. In this connection a police officer testified that he saw Scott "holding himself" and he went into the house with him while he got his clothes, and respondent was profane and her attitude threatening. The officer also saw a knife on the mantel. In 1914 also, Mrs. Scott came to libellant's rooms and threatened to blind him with acid and he knocked a bottle from her hand. In 1920 she threw a milk bottle at him, and a bronze clock, drove him from the house and threatened his life. The final separation followed. On Easter Sunday in 1921, when libellant came to see his children, his wife hit him with her fist and broke his nose. In this there is some corroboration in the testimony of a relative of the husband, but only to the extent that respondent hit him and his nose bled. In the same year respondent found her husband in a house on Emerson Street and accused him of "running with" a nurse who was employed there. She created a disturbance and became so hysterical that she had to be taken to a hospital. In 1937 libellant was attending a picture theater with another woman. Respondent found them there and struck the woman with her purse, and in a loud voice called her a vile name and created a general disturbance. Libellant had been paying attention to both the nurse and his companion of the theater incident, and at the time of the hearing was still keeping company with the latter. On one occasion respondent prejudiced Scott's relations with his employer and he lost his job, though there is testimony in the case that on another occasion she helped him regain employment.

The respondent to the contrary, denied that she was given to profanity and that she ever threatened the libellant, and specifically denied each and every act of indignity charged by him in his testimony. The daughter, who went to live with libellant about the

time of a first hearing in this case, supported the testimony of the father as to respondent's attitude toward him. She also referred to altercations which she had with her mother and complained that at times she had been mistreated. The son corroborated the mother to the effect that she did not use profane language nor mistreat her daughter. Respondent charged that the cause of a number of their altercations was the fact that libellant was attentive to other women, beginning as early as 1916. That he was interested in other women was not denied.

It is clear that the testimony of libellant standing alone is sufficient to support a decree of divorce, but it is equally plain that in essentials it cannot be accepted as true. We cannot find sufficient proof that respondent attempted to throw acid in his face, or that she ever threatened serious bodily harm, and as to the indignities charged, the testimony of other witnesses falls short of necessary corroboration in many respects. Moreover, the delay in bringing this action upon grounds which, if valid, existed nineteen years ago, and the fact that a decree of divorce would supply the ground for revocation of a burdensome support order, has some bearing upon the good faith and the motive of libellant.

The marriage undoubtedly was an unhappy one, the dispositions of the parties were incompatible and each was a source of irritation to the other. Arguments were frequent, but life was hard for the respondent. The support furnished by the husband was inadequate and for years, while rearing two delicate children, respondent was forced to work out by the day. A number of the same alleged indignities were before the county court in the nonsupport action at various hearings, but nevertheless the order of support entered in 1914 was not disturbed, except in amount, and was never revoked. When libellant asked the court for the custody of his children this also was refused.

Consistent with our conclusion is the testimony of an officer of the county court who made an investigation in this latter proceeding. She testified: "I went to many places, both friends and neighbors of many years' standing and they all spoke splendidly of Mrs. Scott, that she was a fine woman, she worked hard, she reared her children herself, and was beyond reproach." This, from her inquiries "all over Oakland."

The uncorroborated testimony of the husband, insofar as it is denied and contradicted by the wife, creates no more than a doubtful balance of evidence and the credible testimony, as a whole, does not supply that "clear and satisfactory evidence of the wrong which the law treats as justifying cause for a divorce." (*Edmond's App.* 57 Pa. 232). The conduct of the respondent toward her husband was not blameless, but we are convinced that such indignities as were actually committed by her were provoked by the conduct of libellant and the retaliation, considering the circumstances, was not excessive. The instant case has much in common with *Esenwein v. Esenwein,* 105 Pa. Superior Ct. 261, 161 A. 425; ibid. 312 Pa. 77, 167 A. 350.

Order affirmed at the costs of libellant.