## Briggs *v.* Briggs, Appellant.

Argued April 14, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, RHODES and HIRT, JJ.

*J. O. Hertzler,* for appellant.

*F. B. Hosbach,* of *Hosbach & Gleeten,* for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1941:

In her libel filed October 8, 1936, Mable M. Briggs,
sought a divorce a. v. m. from her husband, Irvin H.
Briggs, upon the ground of indignities to her person,

462

rendering her condition intolerable and life burdensome. A master recommended a decree; exceptions to his report were dismissed and a final decree entered in libellant's favor by the court below; respondent appeals.

The docket entries indicate that at an early stage of the proceedings a jury trial had been demanded, but after the filing of an original and additional bill of particulars, replete with charges of inordinate sexual demands by respondent upon libellant and of abnormal sexual practices upon his part, the court below very properly suggested, in the interests of public morals, that the case be heard in the privacy of a master's office.

Indignities to the person as a ground for divorce in this state have been defined at length in many of our recent decisions: *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 174 A. 821; *LaClair v. LaClair,* 128 Pa. Superior Ct. 469, 194 A. 224; *Deutsch v. Deutsch,* 141 Pa. Superior Ct. 339, 14 A. 2d 586.

There can be no question that if respondent was guilty of the course of conduct toward libellant, and made the false accusations against her, to which she testified circumstantially and in detail, a strong case of personal indignities was established against him.

It is contended, however, that as respondent denied the truth of material portions of libellant's testimony and as corroboration by disinterested witnesses is lacking, no more than a doubtful balance of the evidence has been created and libellant has failed to make out a clear and satisfactory case by a preponderance of the evidence: *Twaddell v. Twaddell,* 95 Pa. Superior Ct. 429 at 432; *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 499, 171 A. 419; *Romano v. Romano,* 128 Pa. Superior Ct. 409, 414, 194 A. 328; *Scott v. Scott,* 135 Pa. Superior Ct. 505, 510, 7 A. 2d 36.

But it must be borne in mind in this connection that the sexual indignities to which libellant testified

she was repeatedly subjected were committed in private and under circumstances which precluded any possibility of corroboration. Again, the law has made the libellant a competent witness and her testimony, if credible and otherwise sufficient, may furnish a sufficient support for a decree in her favor. Upon the question of libellant's credibility, the report of the master, who had the advantage of seeing and hearing the parties, while not controlling upon the court below or upon us should not be lightly disregarded: *Koontz v. Koontz,* 97 Pa. Superior Ct. 70; *Wiley v. Wiley,* 125 Pa. Superior Ct. 547, 549, 190 A. 363. His opinion upon the vital issue in this case was thus expressed: "Although the charges are of course to be rigorously examined, they are not to be disregarded merely because the libellant cannot produce eye-witnesses. The test is— are the circumstances convincing? In the final analysis that determination must be drawn from an evaluation of the parties themselves: their appearance, their attitudes both off and on the witness stand, the manner in which they tell their stories. The conclusion will depend upon a judgment or intuition more subtle than can be objectively demonstrated. It is the studied judgment of the master, after careful scrutiny of the testimony and observation of the parties, that the circumstances warrant a disregard of the evidence contradictory to that of the libellant's; and that her charges are worthy of belief."

The parties were married November 23, 1933, and lived together less than three years. At the time of their marriage libellant, then thirty-eight years of age, was a duly licensed osteopathic physician and practiced her profession in Corry, Erie County, Pennsylvania. Respondent, then fifty years of age and a farmer, had previously lived with his sister on a large farm in Warren County, about eight miles from Corry.

After their marriage libellant continued her practice

at Corry and furnished living quarters there, at first separate from her offices and later a residence and office in the same house. Respondent spent practically every day on his farm, and only three or four nights a week with libellant at their residence in Corry. In addition to providing and furnishing their residence, libellant paid for practically all their food and other living expenses. Although respondent brought potatoes, pro-· duce and firewood from his farm, he gave her no more than $25 to run the house during the time they lived together.

The parties seem to have had constant difficulties about money matters. Respondent never bought any furniture. His attitude was that it was unnecessary to have two homes as they could live with his sister at the farm. These disagreements about finances were minor matters as compared with the continuous abnormal sexual conduct charged against respondent by libellant. These charges, as well as her testimony in support of them, are set forth in detail in the report of the master and the opinion of the court below; they will not be repeated here.

Other charges were that respondent was jealous and suspicious of libellant's relations with her male patients and accused her of infidelity; that he listened at the door and entered unannounced the room in which she was treating patients, and otherwise interfered with and hindered her in the practice of her profession.

Libellant called five witnesses, friends and patients of hers, who testified she was a good housekeeper, had a cheerful, happy disposition and a high professional standing in the community.

. Respondent denied many of the charges made against him by libellant and attempted to explain others as exaggerations by libellant of trifling incidents. The testimony of the parties cannot be reconciled; one of them has been untruthful on the stand.

In the performance of our duty to reach an independent conclusion from the testimony we find that the record discloses a certain weakness in respondent's testimony which affects its weight and value as a whole. As respects the most serious charges, he was content to rest on general denials. In many instances these outright denials become, on cross-examination, qualified denials, approaching in some cases admissions of the truth of libellant's allegations.

Doubtless there were certain unfortunate factors in this marriage for which neither party was primarily to blame, including a lack of common background or interests, the pursuit of entirely separate careers, and a consequent absence of any real home life.

Our conclusion coincides with that of the court below and we adopt this excerpt from its opinion: "We feel that the quality of the libellant's evidence greatly surpassed the quality of the respondent's evidence and that she has made out a case by the weight of the evidence and a fair preponderance thereof."

From our review of the entire record we are of opinion that this is a case in which libellant was justified in "resorting to the courts to sever a relation no longer endurable"; *Sharp v. Sharp*, 106 Pa. Superior Ct. 33, 37, 161 A. 453.

Decree affirmed at costs of appellant.