## Philo *v.* Philo, Appellant.

Argued March 6, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Thomas M. Lewis,* with him *Maurice H. Kirshner,* for appellant.

No one appeared or filed a brief for appellee.

OPINION BY BALDRIGE, J., April 11, 1944:

The libellant sought to obtain a divorce on the ground of cruel and barbarous treatment and indignities to the person. The master concluded that the charge of cruel and barbarous treatment was not sustained and recommended that a divorce be granted on the ground of indignities. Exceptions filed by the respondent were dismissed by the court below and a final decree was entered in accordance with the master's report. Respondent appeals.

While we are not unmindful that the recommendations of a master are entitled to a careful consideration they are advisory only, not controlling upon the lower court nor this court: *Briggs v. Briggs,* 145 Pa. Superior Ct. 460, 463, 21 A. 2d 415; *Zonies v. Zonies,* 151 Pa. Superior Ct. 317, 321, 30 A. 2d 193. From a careful review of this record our independent judgment (*Snyder v. Snyder,* 141 Pa. Superior Ct. 533, 536, 15 A. 2d 383) is that the libellant has not shown by clear and convincing proof that he is an innocent and injured spouse who is entitled to a divorce. We stated in *Hartley v. Hartley,* 154 Pa. Superior Ct. 176, 179, 35 A. 2d 591:

"A divorce based merely upon a slight preponderance of the evidence, unsupported by clear proof of imperious reasons, will not be granted; and when the testimony of the libellant is contradicted and shaken by respondent, only convincing circumstances will warrant disregard of respondent's evidence: Cobaugh v. Cobaugh, 146 Pa. Superior Ct. 521, 22 A. 2d 764." See, also, *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 446, 174 A. 821, and *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 308, 181 A. 69.

The parties, both past 50 years of age, were married May 5, 1908, and three children, now of full age, were born to them. They lived together until January 9, 1937, when the libellant left their common domicile. The respondent then instituted a maintenance suit and he was ordered to pay her $50 a month. Their marital life was not harmonious or happy. It was marred by many quarrels, a number of which were of a trivial nature. The more serious ones occurred in the last years they lived together and were frequently provoked by the conduct of the libellant.. Indignities provoked furnish no ground for a divorce to a libellant unless there is an excessive retaliation: *Esenwein v. Esenwein,* 105 Pa. Superior Ct. 261, 161 A. 425, affirmed 312 Pa. 77, 79, 167 A. 350; *Viney v. Viney,* 151 Pa. Superior Ct. 86, 89, 29 A. 2d 437.

The libellant complained of respondent's irritable nature; that her shortcomings included failure to pay current bills from the money he gave her, throwing objects at him on numerous occasions, hurling a brick through the windshield of his car, calling him offensive names, putting his clothes out in the back yard and telling him to leave the house, failing to prepare his meals, making accusations of misconduct with other women, and humiliating and insulting him in other ways. The only corroboration of this testimony was that of two police officers. Officer Kravitsky testified

that he answered a number of calls in response to Mrs. Philo's or her daughter's request to quell disturbances at their home. Upon arrival at the house the trouble generally seemed to have ended. Former Officer Kosko testified that he had been called to the Philo home on an average of once a week and generally found Mr. and Mrs. Philo arguing and received complaints from the husband regarding his wife's actions. These officers apparently were not greatly impressed with the seriousness of these quarrels as no arrests were made. The libellant said that some of the neighbors had signed petitions to expel him and his family from the neighborhood because of the respondent's conduct, but he failed to call anyone to corroborate him. Nor did his brother, who libellant testified was present when the appellant threw hot water upon him, appear as a witness. A number of the charges capable of corroboration were unsupported by testimony other than libellant's. The lack of corroboration is a marked weakness in his case.

The respondent denied that she failed to pay bills, threw objects at libellant and the other specific charges he made against her. She stated that he had thrown things at her, pulled her hair, and othewise attacked her physically, etc. She asserted that she did not give him any reason for leaving their home and deserting his family. The real cause of most of the controversies was the husband's attentions to Mrs. Sarah Rought. The respondent objected to his associating with this woman, her accompanying him on trips in his automobile, etc. In reply to her remonstrances he told her to find someone she liked as he wanted to go with Mrs. Rought.

Leonard Philo, who is a school teacher, corroborated his mother in many of the material matters. He denied that she abused or ill treated his father or that she provoked the quarrels. He testified that he had seen the libellant on 10 or 12 different occasions with Mrs.

Rought and frequently heard his mother request him not to keep company with her. The daughter, who lives with the respondent, was not called by either party, nor was the other son.

There were a number of other witnesses called by the respondent. Some apparently were friends of the libellant as they testified rather reluctantly, but their statements clearly show that the libellant did visit Mrs. Rought habitually, calling at the house where she was living after leaving her husband and remaining there a good part of the day as he worked at night. In fact he seemed to have spent most of his time with Mrs. Rought when he was not at work. ' Some of this testimony related to the conduct of libellant after the separation, but that testimony was relevant as throwing light on his previous conduct: *Hewitt v. Hewitt,* 136 Pa. Superior Ct. 266, 275, 7 A. 2d 45.

Henry Rought, the husband of Sarah Rought, stated that the libellant would come to his house and take his wife away; that sometimes she would not return for a week and then would appear with the libellant in his car.

The libellant in rebuttal denied these charges of improper conduct with Mrs. Rought. She was called in rebuttal and stated that she had been a friend of the libellant and his family for a number of years; that they had lived in the same neighborhood and visited one another's home but that she was not unduly intimate with him, although he was frequently at the home of Thompsons where she lived as he brought Mr. Thompson, who worked with him, home every day and friendly relations existed between the men.

The conduct of the libellant naturally aroused the suspicion of his wife and caused her to complain of his devotion to this other woman. In such circumstances it could hardly be expected that a self respecting woman would complacently and uncomplainingly endure that

humiliation. He deserved to be taken to task for his marital derelictions by one to whom he had vowed to be loyal. We recognize that persistent charges of misconduct and infidelity *made without foundation* when they are accompanied by other insulting and humiliating conduct, may constitute a species of indignities (*Fishman v. Fishman,* 134 Pa. Superior Ct. 217, 221, 4 A. 2d 543; *Wittmer v. Wittmer,* 151 Pa. Superior Ct. 362, 368, 30 A. 2d 174) but in this case that the charges had a real basis is amply borne out by the testimony.

The libellant's misconduct should not be rewarded by a severance of his marital ties, thus relieving him of supporting his wife. His evidence fell short of the legal requirements. Therefore, the assignments of error to the entering of the decree of divorce are sustained.

Decree of the court below is reversed and libel is dismissed at cost of appellee.