Ramsey *v.* Ramsey, Appellant.

Argued April 18, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Lee C. McCandless,* with him *Marshall & McCandless* and *James E. Marshall,* for appellant.

*J. Campbell Brandon* with him *J. H. Cochran,* for appellee.

OPINION BY BALDRIGE, P. J., July 19, 1945:
This appeal is from the decree of the court below

granting a divorce to libellant, John R. Ramsey, on the ground of indignities to the person.

The parties were married May 10, 1923, and apparently lived a reasonably normal, and fairly happy, life for a number of years. They have a son, now about 15 years of age, living with his mother, and an adopted daughter at this time about 20 years of age and married. This couple owned and lived on a small 20 acre farm, the title to which is held by entireties. She is a hard worker, not only doing the many chores in and around the house, but labors in the fields. Her husband, for a number of years peddled Raleigh products, but during the depression in the '30s tried to find other employment. His wife stated that four different times, evidently during the year 1939, he left their home without giving her any definite information as to his plans and on one of these occasions took his mother's silverware with him. This action she probably interpreted as an intention to leave his home permanently. His explanation was that his absences were due to seeking employment. She apparently did not give him a cordial welcome when he returned from these trips, at least on one occasion when he came back she told him that she did not have any room for him. She stated: "I was getting tired of him going away and coming back and just stay for a short time and gone again." He finally got a permanent job on December 28, 1940, in Butler and obtained a room there, but according to his testimony he went back home quite often.

The parties differ as to the time a serious dispute arose. The husband fixed it as the first part of 1940 when he was hunting for work. He alleges that as on former occasions she chided him for being lazy and charged him with refusing to work. He admitted that he became angry and "slapped her." When he came to his senses his tie and shirt buttons were torn off. The wife said that this conflict happened in July of 1941 when he was working in Butler for the Standard-Pull-

man Company. Her version of the occurrence was that her husband came to the home and insisted upon their selling the farm and all the personal property. She objected to this plan as she wanted to retain the property and try to pay the balance that was due to creditors. The argument became heated and finally he violently attacked her, choking and dragging her from the kitchen into the livingroom, where he knocked her over a chair and injured her back. She conceded that in the tussle she tore his necktie and shirt buttons off.

The adopted daughter, who was reluctant to testify because it "hurts," corroborated the respondent as to the cause of the disturbance. "Dad wanted to sell the home and Mother didn't want to." She said nothing about the respondent's criticizing libellant for being lazy and out of work. She could not recall definitely whether the respondent was choked by the libellant, but said he "had his hands on her throat." According to her testimony, since this episode her foster parents continued to have arguments; in her opinion the fault was "just about half and half." We accept her version of the quarrel and the cause of it, which discredits the account given by her foster-father and raises a serious doubt about the reliability of other parts of his testimony. She impressed us as being a truthful, unbiased witness.

The wife acknowledged the truth of the charge made by her husband that she said she hated him. She explained that at the time she made that remark she was angry at his treatment of her. She also admitted that just after this fight she asked him whether he was the father of the adopted daughter, as she had received information to that effect. He made no definite answer to this inquiry.

We have no doubt that there now exists a state of domestic infelicity, but that does not present a case of indignities, which renders the husband's condition intolerable and life burdensome within the meaning of

the law. It was very natural, as a result of the harsh physical treatment, for the wife to become angry. The husband is deficient in understanding of normal reactions if he expected her, after his unwarranted conduct, to remain calm and complacent. She acknowledged that if she had had time to stop and think her hasty words would have remained unuttered. Her conduct since the fight has not been blameless by any means, but we admire her frankness in acknowledging her shortcomings. The husband, however, is, in our judgment, largely responsible for her present attitude. It was his indignity, the unwarranted physical attack upon her, that provoked her unfortunate words and blighted the affection she previously had for him.

We are mindful that the conclusions reached by the learned judge below, who heard the case, are entitled to our careful consideration, but the ultimate responsibility of determining the facts lies with us and after a careful review of this record the independent judgment of all the members of this court is that the libellant has not carried the burden of showing by clear and convincing proof that he is an injured and innocent spouse who is entitled to a divorce: *Philo v. Philo,* 154 Pa. Superior Ct. 563, 36 A. 2d 833; *Jacobson v. Jacobson,* 154 Pa. Superior Ct. 449, 36 A. 2d 189. "Divorce based merely upon a slight preponderance of the evidence, unsupported by clear proof of imperious reasons, will not be granted ......" *Cobaugh v. Cobaugh,* 146 Pa. Superior Ct. 521, 22 A. 2d 764.

We fail to find that there was unprovoked conduct that constituted the indignities to the person within the requirements of the law, or that under the circumstances the wife's retaliation was so excessive as to warrant the severing of the marriage bonds. We have frequently said that divorce should not be easily obtained, as marriage is the most sacred of our human relations and should not be dissolved without clear proof of imperious reasons; that indignities provoked by the complaining

party are not ground for divorce unless the retaliation is excessive: *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350.

We think this comment is particularly applicable now, as it is a matter of common knowledge that the number of divorce cases is multiplying with great rapidity. Parties should know that domestic disputes are not cause for divorce unless they rise to a magnitude and importance that renders the injured spouse's condition intolerable and life burdensome: *Deutsch v. Deutsch,* 141 Pa. Superior Ct. 339, 14 A. 2d 586. Even violent quarrels, participated in by both parties, are not sufficient grounds to sever the marital relations: *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 174 A. 821.

Judgment of the court below granting a divorce is reversed and the libel dismissed.