## Cook v. Cook

*Harold L. Ervin, Jr.,* for plaintiff.

*Walter T. ReDavid* and *Robert P. Anderman,* for defendant.

*Ralph B. D'Iorio,* master.

WRIGHT, J., November 22, 1971.—George H. Cook, plaintiff, instituted this action in divorce against his wife, Araxy P. Cook, by filing his complaint on May 16, 1969, alleging indignities to the person as the cause for divorce. Thereafter plaintiff also filed a bill of particulars consisting of 33 items in support of the complaint. A master was appointed by this court to hear the testimony and several hearings were held at which testimony was taken by the court reporter. The testimony at the hearings consisted of 611 pages. Thereafter the master filed a report wherein he recommended that a decree of divorce from the bonds of matrimony be entered on the grounds of indignities

to the person. Exceptions to the report were filed by the defendant.

Argument on the exceptions was heard by the court en banc. Where exceptions have been filed to a master's report, it is the duty of the court to consider the evidence and make its own findings de novo rather than merely to rely upon the findings of the master: Dash v. Dash, 160 Pa. Superior Ct. 317. The court, after carefully reviewing the entire 611 pages of testimony and the numerous exhibits, reached the conclusion that the evidence was more than sufficient to establish a course of conduct on the part of the defendant warranting a decree of divorce. Therefore, on August 24, 1971, the court entered an order dismissing the exceptions and on August 24, 1971, the court also signed a decree divorcing the parties from the bonds of matrimony.

Defendant has appealed the order and decree of this court and therefore this opinion has become necessary.

It is impossible to lay down a definition as to what constitutes indignities to the person: Hahn v. Hahn, 135 Pa. Superior Ct. 39. Each case must depend upon its own facts: Dearth v. Dearth, 141 Pa. Superior Ct. 344. There are certain fundamentals however that must exist in a case of indignities when appraising the evidence. There must be a course of conduct on the part of defendant which must have rendered the condition of plaintiff intolerable and his life burdensome, and there must be evidence from which an inference of settled hate and estrangement may be deduced: Silfies v. Silfies, 168 Pa. Superior Ct. 421.

In this case the parties were married on August 13, 1946, in San Lorenzo, Calif., and resided together in Berkeley, Calif.; San Lorenzo, Calif.; Minneapolis, Minn.; Chicago, Ill.; Forrest Park, Ill.; Philadelphia, Pa., and Broomall, Pa., until August 1967, when plain-

tiff removed himself from their common domicile at 2976 Pennview Avenue, Broomall, Pa. Two children, both girls, were born of the marriage, and at the time of the first hearing the older child was in West Chester State Teachers College and the younger child resided with plaintiff. At the time this action was commenced, the older child was 21 and the younger child was 16.

The testimony of plaintiff and his witnesses established that defendant used foul and abusive language toward plaintiff, called plaintiff vile names and referred to plaintiff's mother by the use of derogatory names. Some of the names defendant called plaintiff were bum, louse, that he was no good, "rat," "rotten pig," and "liar." The evidence also discloses that defendant embarrassed plaintifff on a Thanksgiving visit to plaintiff's brother and sister-in-law when defendant insinuated that there was not enough food provided at the dinner, which was untrue. Defendant referred to sex by the use of vulgar language in front of the younger daughter of the parties who was 14 years old at the time this incident occurred. Defendant on many occasions made physical attacks on plaintiff even though plaintiff would attempt to avoid arguments by walking away from defendant and going to another room and sometimes leaving the residence. On many of these occasions when plaintiff would walk away from defendant she would follow him from one room to another continuing the argument.

The testimony also disclosed that defendant at times called the parties' children "street bum," "no good rotten kid," "slut," "tramp," "hippie" and obscene names.

Testimony in plaintiff's case also revealed that on two occasions defendant threatened to kill him.

Defendant stated to plaintiff and their older

daughter that the daughter was more of a boy than a girl and that the child was unnatural because she did not use lipstick.

The evidence also disclosed that at social gatherings with business associates of plaintiff and their spouses, defendant would discuss the personal affairs of the parties with these persons and that she frequently called plaintiff's place of employment making statements to plaintiff's secretary concerning the personal affairs of the parties, accusing plaintiff of cheating her out of money, accusing plaintiff of infidelity and similar statements that were very embarrassing to plaintiff.

Plaintiff's evidence revealed that defendant wrote to plaintiff's first wife, a daughter by his first marriage and his relatives making statements about him that were very embarrassing.

The testimony revealed that defendant told the parties' older daughter to get out of defendant's house, that defendant made a statement to the effect that she disowned their oldest daughter. Also the evidence reveals that defendant called plaintiff and told him to come to defendant's home and get their younger daughter at which time defendant told their younger daughter to get out and that she was no longer wanted by the defendant. As a result of this action by defendant plaintiff who did not have proper facilities to accommodate their daughter had to arrange to have the child stay with the parents of one of the child's girlfriends. It became necessary for the daughter of the parties to stay at the girlfriend's home for an extended period of time in order that their daughter might complete the school term in the school in which she was enrolled.

The wife of the president of the company for which plaintiff was employed testified that defendant called

her by telephone approximately 15 times telling the wife of the president of personal difficulties plaintiff and defendant were having and making derogatory remarks about plaintiff. The recipient of these calls related their contents to her husband. The president of plaintiff's company testified that he "brought Mr. Cook into the company for the purpose of being the general manager . . .", that because of the telephone calls to plaintiff's secretary and to the witness's wife he became "a little cautious about just how far we should go in turning over responsibility . . ."

The younger daughter of the parties testified that she heard telephone conversations of defendant in which the defendant referred to plaintiff by calling him a "crook," "a no-good bum" and a "jerk." In these conversations defendant also told about the personal affairs of the parties. The younger daughter also testified that on numerous occasions, when defendant was visiting neighbors, defendant referred to plaintiff by calling him names of a derogatory nature.

Plaintiff admitted that on two occasions he struck the defendant before she struck him. He testified that defendant had provoked him and that each time he struck her with his open hand and that this occurred when defendant used filthy sexual language. One incident was when defendant used filthy language within the hearing of their younger daughter and the other was an occasion when defendant used filthy language in stating that all plaintiff wanted her for was sex. Plaintiff testified that on no other occasion did he use force against defendant except when she attacked him and that on such occasions the force was used only for the purpose of protecting himself. Plaintiff admitted that on occasions he did call defendant derogatory names.

We find that the conduct of defendant was degrading

to plaintiff and a great source of embarrassment to him.

It is obvious from her actions as well as her testimony that defendant was seized with a settled hate and aversion toward plaintiff. Defendant denied many of the charges of plaintiff and in answering others has left much unexplained. She had some witnesses who tended to support her, but the knowledge that they had regarding the affairs of the parties hereto was very limited. Plaintiff denied the magnitude of the incident that one witness testified to, and denied that the other witness was in his home at the times she testified to and, therefore, he testified that she would not have had the opportunity to see and hear the incidents she testified about even if such incidents had occurred. The younger daughter of the parties who was living with the parties, testified that this witness was not in the parties' home at the time she testified to but, on the other hand, testified that on most occasions the witness had departed from the parties' home before plaintiff returned from work.

On the question of credibility, the master, an experienced and competent member of the bar, found in favor of plaintiff and his witnesses and against defendant. He had the advantage of seeing and hearing the parties and their witnesses. The master's findings, while not controlling on the court, should not be lightly disregarded: Briggs v. Briggs, 145 Pa. Superior Ct. 460. The master has done an excellent job of analyzing the evidence. The conclusions that the court has reached, after a thorough reading of the testimony, are the same as reached by the master. We are convinced that plaintiff was the injured and innocent spouse and has suffered for many years a course of conduct amounting to indignities to the person of a most harassing and abusive kind.

Therefore, the exceptions to the master's report which recommended that a divorce a.v.m. be granted on the ground of indignities to the person should be dismissed. Accordingly the order of this court dated August 24, 1971, dismissing the exceptions and the decree of divorce dated August 24, 1971, are proper.

## ORDER

And now, November 22, 1971, the order of August 24, 1971, dismissing the exceptions to the master's report and the decree of August 24, 1971, are hereby reaffirmed.