## Fishman *v.* Fishman, Appellant.

Argued November 22, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Samuel J. Halpren,* for appellant.

*Samuel A. Blank,* with him *Edwin S. Malmed,* for appellee.

OPINION BY STADTFELD, J., March 3, 1939:

This case is an action for divorce a vinculo matrimonii, brought by Benjamin Fishman, libellant, against his wife, Rebecca Fishman. The libel alleged as grounds for divorce (1) cruel and barbarous treatment, endangering his life, and (2) indignities to his person such as to render his condition intolerable and life burdensome. The master, before whom the case was heard, recommended a divorce on the ground of indignities to the person. The report of the master having been approved, the court below entered a final decree which is assigned as error.

Where an action is heard before a master, we are required to consider the evidence de novo, pass upon its weight and upon the credibility of witnesses, and reach an independent conclusion upon the merits as to whether a legal cause for divorce has been established: *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774. And the burden is upon the libellant to prove his case by a preponderance of clear and satisfactory evidence: *Mayer v. Mayer,* 133 Pa. Superior Ct. 128, 2 A. 2d, 37.

Benjamin Fishman and Rebecca Fishman were married on June 15, 1909. As a result of the marriage, six children were born, two of whom died very early in life. Of the remaining four children, three—Ervin, Ida and Bertha—have been living with the libellant since respondent's separation. The fourth child, Eva Fishman Propper, is married and resides with her husband.

Eight hearings were held before the master, and hundreds of pages of testimony were taken. Nine witnesses, including all of the four children, testified in

behalf of the libellant; on the other hand, the respondent produced no witnesses other than herself.

The master, in his report, specifically found, "...... that respondent did over a period of time, unwarrantedly accuse libellant of improper conduct with his sister-in-law and of evil intent toward other women ......that these accusations were accompanied by insulting and humiliating conduct, as well as violence ......that respondent was guilty of numerous unwarranted outbursts of temper, in which she frequently directed toward libellant a storm of physical and verbal abuse ...... that respondent, on numerous occasions, over a long period of time, humiliated her husband before his friends, and in his relations with them." The master concluded, from the facts revealed by credible testimony, that respondent had rendered the condition of her husband intolerable and life burdensome.

The report of the master, although only advisory and not controlling, is to be given the fullest consideration, particularly as regards the credibility of the witnesses, as he has had the advantage of seeing the parties and hearing the testimony: *Wiley v. Wiley,* 125 Pa. Superior Ct. 547, 549, 190 A. 363; *Golden v. Golden,* 134 Pa. Superior Ct. 211, 3 A. 2d 941.

A careful reading of the record reveals that, although all of the witnesses did not testify in a manner to corroborate each other, the major charges directed against respondent are corroborated by all the witnesses. The serious trouble between the parties began early in 1932, from which time forward libellant's life was made miserable for him. He was made the direct object of her ungovernable temper. She often manifested her rage by the hurling of abusive language and vile names, but on many occasions substituted more weighty objects, such as a shoe, an iron, or a frying pan. At closer range, pinching, scratching and physical blows were effectively administered. Many of these physical attacks took place in the presence of witnesses and the

testimony in this respect was corroborated. Respondent repeatedly leveled baseless charges of infidelity at libellant, attacked his reputation for good moral character and accused him of being directly responsible for the death of two of their children through neglect and carelessness on his part. Time and time again she humiliated him before his friends and in the presence of their children.

The record is replete with many particular instances illustrative of respondent's character and of her abuse of libellant. It would be to no purpose to review the entire testimony in relation to her conduct. However, the more serious acts of misconduct do require discussion. Libellant testified that on one occasion when the parties lived at Medford, New Jersey, respondent became enraged because of a visit libellant had made to his sister-in-law, Anna, and threw a frying pan at him. Their daughter, Ida, described this incident and testified that her mother had accused her father of improper relations with Anna. Anna was made the subject of many a quarrel and the basis for respondent's nagging libellant over a period of many years. On another occasion, when the parties first moved to Glassboro, New Jersey, libellant had offered to show a lady visitor through the upper part of the house. Respondent imputed improper motives to libellant in his offer of assistance. She also accused libellant of winking at a woman customer in the store, of being intimate with a neighbor, the barber's wife, and of loving another woman. It appears from the evidence that all these charges, ranging from flirtations to infidelity on the part of libellant were entirely baseless and without any foundation whatsoever.

Another very serious offense is attributed by the testimony to the respondent. On one occasion, she told a Mrs. Lichtman that their baby, Dorothy, had died because her husband had failed to furnish food. At the hearing, respondent repeated this accusation. The fact

was brought to light, however, that at the time of Dorothy's death, and for some time previous thereto, respondent had the bank account in her name, and other money in her control. Likewise, at the hearing, respondent charged that the death of another child, David, was due to libellant's neglect in watching him. These charges of neglect of duties, levelled at libellant, resulting in the death of his children, are, insofar as the evidence indicates, without any support in fact. Such baseless charges directed at libellant constitute the more serious, though by no means the entire part of respondent's course of misconduct. That other greatly humiliating treatment was suffered at her hands is amply sustained by the record. The testimony also discloses that libellant's health had suffered and that he had become thin and nervous as a result of his wife's conduct, but that since the parties have been separated, he is much improved in health.

Accusations of misconduct and infidelity, made without foundation and persisted in so as to become a course of conduct, constitute a species of indignities and, when they are accompanied by other insulting and humiliating conduct, are sufficient to warrant a decree of divorce: *Secor v. Secor*, 126 Pa. Superior Ct. 561, 191 A. 647.

Libellant has, in our opinion, met the burden of proving his case by a preponderance of clear and satisfactory evidence. His testimony was strongly corroborated by the testimony of his children and by disinterested witnesses. Respondent, however, produced no witnesses and her testimony was uncorroborated. We conclude that respondent, by a continuous course of conduct toward libellant, rendered his condition intolerable and life burdensome.

Decree affirmed.