Tuirner *v.* Tuirner, Appellant.

Argued October 7, 1941.

 Before Keller, P. J., Cunningham, Bal-
drige, Stadtfeld, Rhodes and Hirt, JJ. 

*Herman Eisenberg*, with him *Samuel F. Pepper* and
*Morris Shafritz*, for appellant.

*Albert B. Mosebach*, for appellee.

Opinion by Stadtfeld, J., July 27, 1942:

This is an appeal from an action in divorce brought
by the husband against the wife. The libel was filed
on December 14, 1931. In the libel the libellant charged
his wife with having committed adultery with divers
unknown persons, and with having offered such in-
dignities to his person as to force him to withdraw
from habitation with her. Pursuant to a rule entered
upon him, the libellant filed a bill of particulars on
February 25, 1932, wherein he amplified upon these
charges and wherein he named Grady Lassiter and one
Stevenson as co-respondents, with whom his wife had
committed adultery, as well as with divers unknown
persons. On April 9, 1932, the respondent filed an
answer to the libel and bill of particulars, denying the
charges therein contained and alleging as an additional
defense recrimination, in that the libellant committed

adultery with one Ethel Lewis and three other women. On March 20, 1936, more than four years after the date of the filing of the bill of particulars, the libellant filed his motion for the appointment of a master.

The master held seventeen meetings, at which he took the testimony of thirteen different witnesses, covering 549 pages in the transcript of the testimony.

On January 27, 1938, the master filed his report recommending that the libellant be granted a divorce a. v. m. on the ground that the respondent had committed adultery with Grady Lassiter. Charges of the libellant that his wife had been guilty of adultery with other men and of indignities to his person were dismissed. To these findings the respondent filed certain exceptions on February 5, 1938, which were duly argued before the court en banc. On May 20, 1938, the court in an opinion by the late Judge OTTO R. HEILIGMAN dismissed the respondent's exceptions, approved the findings of fact and conclusions of law of the master, and adopted same as those of the court. The court made additional findings of fact and conclusions of law. The respondent then took this appeal.

The principal facts established by the evidence are as follows: The parties were married on June 22, 1927, when each was about twenty-six years of age. The libellant is a school teacher, and the respondent is a practical nurse. They lived together until November 27, 1931.

Sometime in April, 1931, the respondent and her cousin, Ethel Lewis, met one Grady Lassiter. They had been introduced to Lassiter by the brother of the respondent. On November 25, 1931, the libellant and respondent resided in an apartment in Philadelphia. Mrs. Ethel Lewis, a cousin of the respondent, resided with them.

David Lewis, the respondent's brother, and Grady Lassiter, his friend, arranged to come to Philadelphia to attend the football game between Howard and

Lincoln Universities, which was to take place in Philadelphia on Thanksgiving Day, 1931. Arrangements were made for Lassiter to stay at the home of the libellant and respondent over the week-end. The libellant and respondent also made arrangements to entertain a number of other guests over the Thanksgiving week-end. The day before Thanksgiving, Lassiter, who was a student at a North Carolina University, came up from North Carolina, and David Lewis, who had come in from New Jersey at the same time, decided to spend Thanksgiving Day away from the game. The libellant and other guests, however, did attend the football game. The respondent and Mrs. Lewis stayed away from the game in order to prepare the Thanksgiving dinner for the guests. Lassiter remained in the apartment Thanksgiving evening and slept on a day couch with the respondent's brother. He departed Saturday morning. After his departure the libellant removed his personal belongings from the apartment and subsequently instituted the libel in divorce. He gave as his reasons for leaving, certain alleged adulterous acts between the respondent and Grady Lassiter, and certain letters written by Lassiter, which he alleged he found in respondent's trunk.

These letters were alleged to have been sent by Lassiter to the respondent. The libellant construed these letters to show an intimate relationship between the respondent and Lassiter.

At the master's hearing the libellant offered the testimony of Mrs. Lewis, to show that the respondent had confessed to her an adulterous relationship with Grady Lassiter. The libellant also introduced the letters from Lassiter.

The respondent not only denied any illicit relationship with Grady Lassiter, but denied the alleged confessions testified to by Ethel Lewis. The respondent denied all other of the libellant's charges. Her reasons

for failure to attend the game were that she had to remain at home to prepare the Thanksgiving dinner for the guests.

Respondent raised the defense of condonation.

As an additional defense the respondent introduced testimony that Ethel Lewis, who resided with libellant and respondent, and who was dependent upon them for support, was unduly intimate with the libellant, and that this was a constant source of argument between libellant, respondent and Ethel Lewis. Respondent's version as to the reasons for libellant's leaving their common abode was not the finding of the letters, of which respondent stated libellant knew all along, nor Lassiter's visit to Philadelphia, but rather because of the argument which occurred between respondent and Mrs. Lewis over the relationship between libellant and Mrs. Lewis.

Mrs. Ethel Lewis, cousin of the respondent, testified that the respondent and Grady Lassiter, the co-respondent, met at a party in West Philadelphia in April of 1931 while the libellant and respondent were separated. Grady Lassiter and a male friend of his, named "Speedy", accompanied the respondent to her apartment and, by the admissions of the respondent to Mrs. Lewis, stayed until eight o'clock in the morning. The respondent and her sister, Mrs. Virginia Butler, denied that the two men spent the night as stated but a letter from the co-respondent to the respondent dated May 5, 1931 and another dated May 16, 1941, referred to a morning's conversation following the night in question and tend to confirm the fact of their presence.

The libellant placed in evidence a series of letters from the co-respondent to the respondent that he obtained from her trunk shortly previous to the bringing of this action and which were admitted by the respondent to be her letters. A letter dated June 12,

1931, from co-respondent to respondent suggested an assignation at respondent's sister's house in Rutherford, New Jersey, and there was evidence that this engagement was kept for the libellant received a letter from his wife from that address dated June 16, 1931.

There was also evidence that the respondent and co-respondent met in Asbury Park in the summer of 1931.

The libellant testified that the co-respondent, who was then unknown to him, called upon the parties at the Douglas Hotel, 1409-11 Lombard Street, Philadelphia, on the morning of September 22, 1931, but, upon finding the husband there, stated he was looking for a Mr. Smith or a Mr. Brown and hurried away. The respondent later admitted to Mrs. Ethel Lewis that after her husband went to work the co-respondent returned and spent some time with her although the respondent denied this before the master. Shortly afterwards, the respondent and co-respondent attempted to rent a single room from Mrs. Mary White, 2049 North Thirteenth Street, Philadelphia, but were unsuccessful. The respondent subsequently rented a room, alone at this address and received mail from the co-respondent addressed there.

Later in the fall of 1931 the parties leased an apartment at 1443 North Nineteenth Street, Philadelphia, and it was here the events occurred which led to their final separation and the bringing of this action. The letters taken from the respondent's trunk showed that she had been corresponding with the co-respondent and had been sending him money in the hope that he would visit her over Thanksgiving vacation under the subterfuge of attending a football game. The co-respondent called at the house on the afternoon of November 25, 1931, under the pretence of visiting Mrs. Lewis, who was then staying with the Tuirners, and pretended that he did not know the respondent al-

though the libellant shortly discovered the respondent had for some time been wearing a medal she had received from the co-respondent in the past. All witnesses agreed that Grady Lassiter had not attended the football game. That afternoon everyone in the house left for the Lincoln and Howard Universities football game with the exception of the respondent, who pleaded a headache, the co-respondent, who said he was going to shoot pool, and Mrs. Lewis, who was cooking dinner.

Mrs. Lewis testified that the respondent and co-respondent spent most of the afternoon either in the dining room or the bedroom behind locked doors, that she saw them embracing and they were entirely out of her sight while she was attending to the dinner for about an hour. When the libellant returned from the game he noticed his wife's hair was mussed, the next day he caught the respondent and the co-respondent embracing in the living room and ejected the co-respondent.

On November 28, 1931, the respondent left the house about noon and told Mrs. Lewis she was going to the Roadside Hotel to meet Lassiter. The libellant then found the letters in her trunk and left the house himself.

Another witness, Mary H. White, on behalf of libellant, stated that in September, 1931, Lassiter had come to her home to rent a room, having been sent there by the respondent, and later in the day the respondent came there to see him. The witness stated that their actions indicated that they both wanted to stay in the room and so she had refused to rent Lassiter a room on that account. The witness had known the respondent since 1922 and was a friend in whom respondent confided some of the details of her relationship with Lassiter, among them that she planned to invite Lassiter to Philadelphia for Thanksgiving, 1931, that she was

sending him money, and that the letters addressed to the respondent at the witness's house in the fall of 1931 from North Carolina were from Lassiter. In the month of September, 1931, after Lassiter had been there, the witness rented a room to the respondent for several weeks, and while there the witness had to request the respondent not to entertain men in the house after the witness had gone to bed.

Edward Tibbs and Eugenia Bragg, two other witnesses called by libellant were so vague in their testimony that both the master and the court below disregarded their testimony.

Where an action is heard before a master, we are required to consider the evidence de novo, pass upon its weight and the credibility of witnesses, and reach an independent conclusion upon the merits as to whether a legal cause for divorce had been established: *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774; *Fishman v. Fishman,* 134 Pa. Superior Ct. 217, 4 A. 2d 543.

Quoting from the opinion of Judge PARKER, formerly of this court and now a Justice of the Supreme Court, in *Pierpoint v. Pierpoint,* 108 Pa. Superior Ct. 108, 110, 164 A. 808: "Proof of an adulterous inclination or disposition at the time of the act charged, and of an opportunity to satisfy such inclination, is relevant evidence in such cases, and if occurring under circumstances that would lead the 'guarded discretion of a reasonable and just man to a conclusion of guilt,' is sufficient to justify a decree in divorce."

The testimony contains sufficient instances of the inclination of the parties by the correspondence, the previous meeting, and the assignation at the home of the Tuirners', and the opportunity afforded provided by the afternoon the respondent and co-respondent spent together behind closed doors.

Appellant contends that the letters offered in evidence were inadmissible. The testimony shows that in

response to the letter from the co-respondent suggesting an assignation in Rutherford, New Jersey, the respondent did go to Rutherford, for the libellant received a letter from her from there about the time of the proposed assignation. The letters were admissible by reason of the statements made in reference to them and by the acts done pursuant to the requests and declarations in the letters. Some of the letters were addressed to Mrs. Lewis, but the fact remains that they were found in Mrs. Tuirner's possession and were obviously intended for her since they reached her and she retained them. The letters in themselves would not be sufficient proof of adultery, but in connection with the other testimony are sufficient to establish the charge in the libel.

Quoting from the opinion of Mr. Justice McCollum in *Gruninger v. Gruninger*, 190 Pa. 633, 654, 43 A. 128: "Aside from the oral testimony relating to the source and authenticity of the letters there is quite enough on the face of them to establish an unlawful intimacy, and when it is considered in connection with the oral testimony the conclusion that the respondent and co-respondent were parties to it is irresistible."

Appellant contends that the testimony of Ethel Lewis should not be admitted. In addition to the confessions of respondent to Mrs. Lewis we have the letters, the testimony of the libellant with reference to the co-respondent seeking out his wife at the Douglas Hotel, the fact that the co-respondent sought to conceal his acquaintanceship with Mrs. Tuirner when he arrived at the Tuirner home before the football game, the fact that respondent was wearing a medal belonging to Lassiter and the fact that the libellant, himself, caught the couple embracing. All of these facts tend to show that there was an intimate relationship between the respondent and the co-respondent and furnish corroborative proof that is borne out by the confessions to Mrs. Lewis.

In regard to the condonation respondent testified that she and libellant had sexual intercourse together in June, 1932 and November, 1935. Respondent stated that both her landlady and a friend, Mrs. Julia Tuoner, could describe libellant's visits to her apartment, but neither was called to testify. Libellant denied these visits, but admitted that he had met the respondent in June 1932, for the purpose of discussing her support. He stated, however, that he always insisted on seeing her in a public place, and had never seen her in her apartment or any other private place.

As pointed out by the master the libellant was paying alimony during this time and when he fell behind in his payments, respondent had attachments issued to make him pay, all of which is inconsistent with a reconciliation between the parties.

As to the counter charges of adultery against the libellant, they are based entirely on alleged admissions which respondent claims were made to her by libellant. Libellant denied them and there was no corroborating testimony to establish these charges.

The report of the master, although only advisory and not controlling, is to be given the fullest consideration, particularly as regards to the credibility of the witnesses, as he has had the advantage of seeing the parties and hearing the testimony: *Golden v. Golden,* 134 Pa. Superior Ct. 211, 3 A. 2d 941; *Fishman v. Fishman,* supra.

From an independent examination and consideration of the testimony we have come to the same conclusion as the master and the court below, and believe that the charge of adultery in the libel has been fully established.

The assignments of error are overruled and the decree of the court below is affirmed.