## Prisinzano *v.* Prisinzano, Appellant.

Argued October 8, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*John Garaguso,* for appellant.

*Harry Goodfriend,* for appellee.

OPINION BY RHODES, J., January 28, 1943:

This is an appeal by wife respondent from the decree of the court below granting her husband, the libellant, a divorce a.v.m. on the ground of indignities to the person such as to render his condition intolerable and life burdensome.

A master recommended a decree; exceptions to his report were dismissed and a final decree was entered

by the court below on the opinion of ALESSANDRONI, J.

Although we have not attempted to formulate a general rule as to what constitutes indignities to the person, we have frequently given the elements of conduct which would warrant a decree in divorce on that ground. We shall not repeat what we have previously said. *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 174 A. 821; *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 181 A. 69.

The parties were married in Berlin, New Jersey, on December 19, 1932, and after a period of three weeks they resided together in Philadelphia until their separation on July 13, 1933. At the time of their marriage both were residents of Philadelphia. Libellant was about 26 years of age and respondent 29, according to their marriage license. Libellant was a graduate of Temple University, but unemployed at the time. Respondent had been a stenographer, but when married she was conducting a dress shop. Both were apparently well educated. One child was born as a result of the marriage.

We are of the opinion that the testimony of libellant and his witnesses, if accepted, is sufficient to establish a course of conduct by respondent constituting indignities to his person and to warrant a decree of divorce on such ground.

We have held that in divorce actions the burden is on the libellant to establish his or her case by clear and satisfactory evidence, and the weight of the evidence must be in his or her favor. *LaClair v. LaClair,* 128 Pa. Superior Ct. 469, 471, 194 A. 224; *Murfit v. Murfit,* 134 Pa. Superior Ct. 327, 332, 3 A. 2d 1020.

It is contended in respondent's behalf that libellant has failed to meet this burden. Libellant's credibility is also questioned. As to the credibility of witnesses, the report of the master, who saw and heard the witnesses, while not controlling upon the court below or

upon this court, should not be lightly disregarded. *Briggs v. Briggs,* 145 Pa. Superior Ct. 460, 463, 21 A. 2d 415. The master believed the libellant and his witnesses as to respondent's conduct, and refused to accept respondent's version of their marital life, or the testimony of some of her witnesses.

In appraising respondent's testimony the court below also said: "One is impressed when reading the testimony of the respondent with lack of candor and straight-forwardness. It constantly appears that she is acting instead of testifying and deliberately trying to create an impression. Even to questions propounded by her own counsel she would be unresponsive and repeatedly volunteered information. She portrayed herself as an innocent and blameless person who was constantly being injured and persecuted beyond the limit of human endurance. In spite of this, however, she did not react as a normal person, but instead treated her persecutors with admiration, respect and esteem. This was particularly true of her mother-in-law to whom she attributes a diabolical plot and insidious behavior. Nevertheless, even after she had testified against her, the respondent still felt great love and respect toward her. This was also true of her father-in-law whom some of the respondent's witnesses said called the respondent vile and vulgar names."

We shall not attempt, and it would serve no worthwhile purpose, to extract from the voluminous record and relate all the instances of indignities which, in our judgment, constitute a course of conduct and are sufficient to establish indignities to the person of libellant. This, as well as an analysis of respondent's denials and countercharges, has been done in the master's report and in the opinion of the court below.

The inception of their difficulties was probably the result of libellant's unemployment, although it is admitted that he made a continuous and bona fide effort

to secure permanent positions. But it is apparent that respondent had a violent temper, and that she displayed it generally and without restraint. During the short time they lived together, about seven months, libellant was obliged to leave at least five times, when he went to the home of one of his sisters in the city of Philadelphia, before the final incident and permanent separation. On one occasion when he returned respondent said to him: "I thought I told you to get the hell out of here." As to her acts thereupon libellant testified: "She began to kick me again. She called me a skunk and a louse and a no good bastard. ...... She was screaming them at the top of her voice." Conduct of this type was often repeated. There is ample proof by the testimony of witnesses who corroborated libellant that she habitually called libellant vile and abusive names, repeatedly insulted him, and humiliated him in public. Her hostility was also manifested by physical violence, threats, and accusations. Her acts were not isolated incidents but were so repeated and continuous as to constitute, in our opinion, a course of conduct that made the continuance of the marital relationship impossible. Respondent's attitude toward libellant's mother and sisters, if not an indignity as to him, was indefensible, a manifestation of her settled hate both of libellant and the members of his family, and a clear indication of her temperament. Libellant's parents, who testified for libellant and described respondent's conduct, lived next door to where libellant and respondent resided.

Respondent's testimony is not convincing, and it is not always consistent. The two incidents to which she refers to establish the fact that libellant had an ungovernable temper are overplayed. We accept his version of her conduct rather than her description of herself and of him. His corroborating witnesses are

more persuasive on material matters than those who testified in her behalf.

We have carefully read the 800-page record, and the lengthy briefs, and it is our independent conclusion from the testimony that respondent's acts constituted a course of conduct such as to render the condition of libellant intolerable and life burdensome, and that libellant has met the prescribed requirements of proof. The decree will be affirmed.

Decree is affirmed.