## Wittmer *v.* Wittmer, Appellant.

Argued November 17, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Harold E. Kohn,* with him *Murdoch, Paxson, Kalish & Green,* for appellant.

*Walter N. Keating,* for appellee.

OPINION BY STADTFELD, J., February 1, 1943:

This action for divorce was brought by libellant husband against respondent wife upon the ground of indignities to the person.

An answer was filed by respondent denying the averments of the libel and bill of particulars and averring that libellant willfully and maliciously deserted her on or about July 1, 1938, by removing from their common habitation at 5601 North 4th Street, Philadelphia, without cause or justification.

The case was referred to a master who concluded that the averments of the libel had not been proved and recommended that the libel be dismissed.

The parties were married at Philadelphia on May 22, 1907, and lived together until the date of the separation which occurred on July 1, 1938. The libellant is 57 years of age and the respondent is 58 years of age. They have one son, 23 years of age.

The record indicates that 12 meetings were held be-

fore the master, and the notes of testimony contain 751 pages. Much of the testimony is immaterial and throws no light on the issue in the case.

The court en banc, consisting of three judges, sustained exceptions to the master's report and granted the prayer of the libel after a careful review of the testimony, in an exhaustive opinion by CRUMLISH, J.

The libellant testified that from February, 1930, to the day he left her, respondent had followed a course of conduct which made his condition intolerable and his life burdensome. His testimony may be summarized as follows: Over a period of eight years respondent removed libellant's clothes from their joint bedroom, moved a cot into the kitchen, was away to religious meetings two-thirds of the week, wanted to preach, accused libellant of not being a Christian, accused him of running around with other women, upbraided libellant as a sinner because of his business which he had been in for 35 years, engineer in a brewery, and knew no other, and from which respondent had received support without murmur for 24 years; called libellant a "whorebuck" and "whoremonger," accused him of trying to kill her through a doctor who belonged to her same church, accused him of stealing the affections of another man's wife, demanded he give up his lodges, went away for a number of months, remained away from July to November on one trip, and nine months on another trip, to none of which he actually agreed to, having to come home at night after work and do the washing and cleaning in the house, to go continuously without meals, threw libellant's wedding ring in his face and told him she didn't want him, disturbed the neighborhood morning, noon and night with piano playing and singing; continuously made remarks that she, the respondent, could get along without him, the libellant; accused him of adultery, caused him to consult a physician about his nerves and stomach and loss of weight; all these things were such, that it was impossible for him, in his nervous and mental condition, to

endure any **longer.**

Libellant had no proper home. Either his wife was away from it much of the time at Nyack, Tamarack, Tennessee, Jamaica, British West Indies or elsewhere, or else she was there haranguing and praying, indulging in un-melodious singing, with such constancy and intensity that he had no comfort or peace.

After her return from Jamaica in 1932, the respondent never prepared or served any meals for the libellant. The respondent did not agree to the Tennessee trip, although he made remittances to her for her support while she was away. He objected to the Jamaica trip but finally consented in the hope that the respondent would abandon the venture.

Following the respondent's return from Jamaica, although the parties occupied the same house, they were almost strangers. From that time on, respondent refused to talk to libellant despite libellant's repeated attempts to speak with her from 1932 to 1936.

In support of libellant's case his witnesses testified as follows: William C. Wittmer, libellant's son, an ordained minister of the Christian Missionary Alliance, who is married and has a five year old child, testified that he obtained his knowledge of family affairs largely from his presence at home during vacations from seminary and on visits after he had entered into the active ministry. He corroborated the libellant's story that respondent insisted on libellant's no longer occupying the same room with her. Further, he said that libellant was not even allowed to go into the back room for his clothing.

He further testified that the respondent, in his presence, told the libellant that she would no longer have any personal relations with him because of her religious convictions, the kind of life he was leading and the work he did. To carry on such personal relations would be inconsistent with her "spiritual guidance."

The son further testified that he received many telephone calls from the respondent that serious things

were going on at home and that respondent was being abused and mistreated, but would never find anything to substantiate these complaints when he reached there. He further testified that the respondent accused libellant of being an "out and out sinner" and of having had illicit sexual relations with other individuals. That the reason for respondent's neglect of her home lay in respondent's supposed "call" to go out into Christian work and to save people. As a result no meals were prepared for libellant.

The son's testimony was a complete corroboration of the allegations as to respondent's almost total neglect of her household duties throughout the eight year period complained of in the libel. He heard his mother call his father a "whoremonger" innumerable times, until 1937-1938.

Miss Bertha Wittmer, called on behalf of the libellant, testified that she was a sister of libellant, that she visited them at their house and that respondent told her that the libellant always does the washing; that she visited the libellant and respondent at the time the libellant was ill and found that the respondent was not taking care of libellant.

It was agreed by counsel at the hearing before the master that if Doctor Ludwig Loeb were called as a witness, he would testify that the libellant was under Doctor Loeb's professional care during the months of November and December, 1933 and January, 1934, and that libellant at that time was suffering from neurasthenia with disturbances of the nervous system, stomach and intestines, resulting in severe stomach and intestinal pains, and being afflicted with insomnia.

Miss Carrie Knapp, called as a witness for libellant, testified that she generally went to church with libellant and respondent every Sunday between 1927 and 1930, and that the respondent had told her that libellant could fix some things for her around her house, and came there a few evenings in company with respondent, with the exception of once. That on one occasion respondent told the witness that there was a man in their

street who had had improper relations with a woman and that she wouldn't be surprised if it had been her husband. The witness further affirmed the story that at one time the respondent, in all seriousness, told the witness that she could keep her husband for a year if she thought he was so handy at making repairs, and that "if you still want him after that you can keep him for good." The witness denied having improper relations with libellant.

The respondent testified in defense as to her occupation at the present time, that she lives by faith: "I mean I serve my Lord, here and there, as he leads my spirit to serve. In between I do what my hands find to do." That she does her housework "occasionally." That she accused the libellant of looking at Carrie Knapp with an adulterous eye. That the libellant never hit her nor did he threaten her. That she did not know and could not remember whether she ever called the libellent a "whoremonger." That she wrote letters to her son in which she told him libellant was a sinner. That she wrote a letter to her daughter-in-law in which she said, "I would not take a cent from one that serves the devil and hurts my Christ." That she, the respondent, was honest and that her son lied.

The respondent's witnesses were simply friends of the respondent who made visits to her home at times when libellant was not even around the premises. Mrs. Harriet Klinger never talked to the libellant. Mrs. Pearl Kreidler never met libellant and knew nothing of the cause of their estrangement. Miss Anna Rowntree had never seen the libellant. Mrs. Helen Schmidt-Vautier met the respondent in 1933, but never met libellant. Mrs. Christine Fellows met respondent in June, 1934, and testified in answer to the following question: "Q. Did Mrs. Wittmer ever indicate to you her feeling that she had been called to preach the mission, and that she therefore felt that inconsistent with her marital duties as a wife? A. Yes, she told me that she thought about preaching and teaching the word of God."

After a careful consideration of the entire record, we are of the opinion that the libellant has proven a case on the ground of indignities to the person. He has given specific instances of respondent's conduct, which over a period of eight years caused his life to become burdensome and his condition intolerable. Libellant was the injured and innocent spouse. The evidence shows that respondent's accusations of illicit relations were totally unfounded. There was no provocation on the part of the libellant.

This court in *Breene v. Breene,* 76 Pa. Superior Ct. 568, has indicated that "indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement."

Likewise in *Fishman v. Fishman,* 134 Pa. Superior Ct. 217, 221, 4 A. 2d. 543, we stated: "Accusations of misconduct and infidelity made without foundation and persisted in so as to become a course of conduct, constitute a species of indignities and, when they are accompanied by other insulting and humiliating conduct, are sufficient to warrant a decree of divorce: *Secor v. Secor,* 126 Pa. Superior Ct. 561, 191 A. 647."

In *Hagan v. Hagan,* 120 Pa. Superior Ct. 582, 182 A. 654, this court said: "The libellant is corroborated in many respects by his witnesses and the respondent's own testimony tends to substantiate much of the testimony of the libellant. She admits ...... that she accused him of running around with other women and of being unfaithful to his marriage vows."

The report of a master is advisory only and it is our duty to examine the testimony carefully and to make our independent finding: *Fishman v. Fishman,* supra.

We believe that the libellant met the burden of proof and established his case by clear and satisfactory evidence and have come to the same conclusion as did the court en banc.

The assignments of error are overruled and the decree of the court below affirmed.