Fullwood *v.* Fullwood, Appellant.

Argued November 15, 1944. Before Keller, P. J., Baldrige, Rhodes, Hirt, Reno and James, JJ.

*Luther C. Schmehl,* for appellant.

*Albert S. Readinger,* for appellee.

Opinion by Reno, J., January 25, 1945:

This action in divorce was brought by the wife on the ground of indignities. The master recommended a divorce; respondent's exceptions to the master's report were dismissed by the court; and a final decree was entered. Respondent appealed.

The parties were married in North Carolina in 1916, and lived together there until 1929 when they moved to Reading. They lived in several rented homes until 1942 when they purchased the home in which both were still living at the time of the master's hearings. Eight children were born of the marriage, and aside from family discord caused by respondent's late hours, his neglect to take his wife out socially, and his complaints about libellant's cooking, there was no real difficulty until the Fall of 1942, when respondent became suspicious of the relationship between libellant and the minister of their church.

Libellant was active in church affairs and frequently attended religious services. She was also permitted by the minister to do the family ironing in the church building because her own home was not equipped with electricity. Jealousy gripped respondent, and he began a repeated course of accusations against libellant, imputing to her adulterous intimacy with the minister, and calling her opprobrious names consistent with the charges heaped upon her. On one occasion he threatened to kill both libellant and the minister, and the scene created at their home was so grave that the children called the police to quell the disturbance. Respondent began conducting his own private investigation, trailing libellant through the streets and telephoning the homes of her friends to check upon her whereabouts. Rumors of the alleged improprieties were circulated among the parishioners and the minister was relieved of his duties.

Respondent did not deny that he had accused his wife, and he admitted the threat to kill her and her supposed paramour, and that he had shadowed her and inquired among the neighbors about her, but he attempted to justify his behavior by showing that he had just cause for suspicion arising principally out of two incidents to which he testified. On these occasions, he said, he observed libellant and the minister in the bedroom of the

minister's apartment over the church with the lights turned out. Libellant denied she had improper relations with the minister or any other man, and that she had been in the apartment on either of the two occasions. Her whereabouts on one of the evenings was corroborated by a friend whom she was visiting.

The issue thus became one of credibility, and without reciting details it is sufficient to say that the testimony of respondent concerning the two incidents is inherently improbable. Respondent was contradictory and evasive at points, and his alleged reactions to what he said he saw did not inspire belief. Libellant is apparently a woman of good character; she has done domestic work for years to help support the family; and her ability and efforts as a homemaker were attested by her children and friends. After conditions in the home had reached a crisis, libellant did write a note to be used as evidence against her by her husband in a proposed divorce action, but in view of her evident lack of education and her explanation that she was then without funds to start her own proceedings, the note is not conclusive against her present veracity. Although it is our duty, in divorce cases where there has been no jury trial, to make an independent examination of the record to determine whether the allegations in the libel have been sustained, it has frequently been said that the conclusions of the master who saw and heard the witnesses, while not controlling, are not to be lightly disregarded. This rule is particularly applicable in cases where the testimony is conflicting, for then the opportunity to observe the demeanor of the witnesses is especially helpful in arriving at the truth. *Prisinzano v. Prisinzano,* 151 Pa. Superior Ct. 207, 30 A. 2d 182; *Isaacs v. Isaacs,* 149 Pa. Superior Ct. 508, 27 A. 2d 531. Our own careful study of the record brings us to the belief that the master and the court below properly evaluated the testimony when they placed credence in libellant's version of the facts.

Unfounded accusations of infidelity by one spouse against the other, when accompanied by other degrading and humiliating behavior, and when persisted in sufficiently long to become a course of conduct, are enough to make out a case of indignities to the person. *Wittmer v. Wittmer,* 151 Pa. Superior Ct. 362, 30 A. 2d 174; *Grasso v. Grasso,* 143 Pa. Superior Ct. 293, 18 A. 2d 112; *Fishman v. Fishman,* 134 Pa. Superior Ct. 217, 4 A. 2d 543. The continuing accusations were unwarranted, and in combination with the threat to kill libellant, the vile names respondent called her, and other reprehensible conduct which need not be stated in detail, demonstrate an intolerable condition proven by the required measure of clear and satisfactory evidence. *Martin v. Martin,* 154 Pa. Superior Ct. 313, 35 A. 2d 546; *Britt v. Britt,* 153 Pa. Superior Ct. 587, 34 A. 2d 810.

Libellant's failure to withdraw from the common home is a factor to be considered in deciding the severity of the effect of respondent's conduct upon her and whether libellant's life was in fact made burdensome. *Tumini v. Tumini,* 150 Pa. Superior Ct. 363, 28 A. 2d 357. Here, however, libellant's continued residence with respondent was satisfactorily explained. She was helping to pay for the house with her own earnings, and, because of her real and substantial apprehensions founded upon prior experiences, she could not safely leave her two minor children alone with respondent. We think her failure to move out, under the circumstances, is more indicative of libellant's tenacity than of respondent's good behavior.

Decree affirmed.