## Solof *v.* Solof, Appellant.

Argued April 18, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Edward S. Sheinberg*, for appellant.

*Maurice Chaitkin*, with him *Jas. Howard Brennan*, for appellee.

Opinion by Rhodes, P. J., July 17, 1947:

This is an appeal by respondent from the decree of the court below granting a divorce to his wife, the libellant. Libellant in her libel charged that respondent had offered such indignities to the person of libellant as to render her condition intolerable and life burdensome. Respondent filed an answer to the libel and also an answer to libellant's bill of particulars. The evidence was presented to the court below without a jury.

The parties were married in New York on February 14, 1929. They lived in Huntington, West Virginia, where respondent was engaged in business, until September, 1929. Respondent having failed in business, they came to Pittsburgh where they lived with libellant's parents. Respondent was employed by libellant's father who conducted a furniture store in Pittsburgh. Libellant's father died in January, 1938, and thereafter the business was conducted by libellant's mother, who died in August, 1941. Libellant then inherited the business, and retained respondent as an employee. Until after the death of both of libellant's parents, libellant and respondent had no separate home of their own, and he did not provide for any of the household expenses. Prior to the marriage, libellant's father gave to her a wedding present of $10,000 in cash, and to the respondent a present of $5,000. The entire $15,000 was given to respondent for the improvement of his business and financial position. The first dissension between the parties apparently arose about ten days after their marriage while sojourning in New York, when libellant had to pay the hotel bill which they had incurred. Shortly thereafter she was obliged to pay checks which were issued by respondent without funds in the bank to meet them. Respondent's domineering and possessive attitude inevitably produced recurring quarrels and disputes between libellant and respondent, and between respondent and libellant's father and mother during the time the parties lived at the home of libellant's parents—

a period of approximately twelve years. Although respondent's conduct of his own business in Huntington, West Virginia, resulted in bankruptcy, he endeavored to have his ideas prevail as to the furniture business in which he was employed, both before and after it was acquired by libellant. Even in his testimony before the court he continually referred to libellant's property and business as his. The testimony of libellant and her witnesses discloses the use of vile and foul language by respondent towards libellant, and repeated unwarranted reflections upon her morals. See *Fullwood v. Fullwood*, 156 Pa. Superior Ct. 409, 412, 40 A. 2d 876. He frequently accused her of infidelity while they lived together, and of having lived with other men. Finally, in the presence of libellant and an insurance agent, who had transacted business for many years with the parties, respondent stated to the latter: "Take her with you. Get her to hell out of town." A short time thereafter, in October, 1945, a separation agreement was executed by the parties under which respondent received from libellant $15,000. Notwithstanding the terms of the agreement, which provided that respondent should not interfere or molest libellant in her business or private life, respondent immediately inaugurated a course of conduct which in various ways sought to annoy and embarrass libellant. The culmination of his conduct in this respect was about ten days after the execution of the agreement when respondent came to libellant's store and publicly proclaimed in the presence of employees and customers that libellant was no good, that she had lived with men for sixteen years, that she was living a dual life, that no wonder she was a nervous wreck. After this tirade, to which disinterested witnesses testified, he wound up by saying, "I love you and everybody quarrels, so what is there to that," and then requested that libellant should take him back to live with her. See *Zonies v. Zonies*, 151 Pa. Superior Ct. 317, 320, 30 A. 2d 193.

After libellant filed her action in divorce, respondent continued to demonstrate his real character by the circulation of stories to people with whom she transacted business for the obvious purpose of injuring her and her business affairs.

The court below who heard and saw the witnesses said: "The Court was greatly impressed by the frank, candid statements of the Libellant. Her credibility and that of the witnesses, in the opinion of the Court, were beyond reproach, and the Court is of the firm opinion that she has met the burden of proof required by our statutes to entitle her to a divorce upon the grounds of indignities to the person that rendered her condition intolerable and life burdensome."

We agree with the court below. See *Holbrook v. Holbrook,* 160 Pa. Superior Ct. 129, 131, 50 A. 2d 709. We are not impressed with the testimony of respondent which is contradicted in some important respects by disinterested witnesses. It is true that most of the alleged indignities occurred when libellant and respondent were alone, but there is corroboration of libellant's testimony as to respondent's conduct and his unfounded accusations of infidelity against respondent. It is difficult to give very much consideration to the testimony of a witness who in the presence of others accuses his wife of "living with men like a common whore," and at the same time asks that she take him back and live with him.

We think it has been established by the credible testimony that the indignities consisted of a course of conduct on the part of respondent; that such conduct rendered the condition of libellant intolerable and life burdensome; and that an inference of settled hate and estrangement may be adduced from the evidence presented. The applicable law has been repeatedly stated. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 118, 50 A. 2d 520.

The decree of the court below is affirmed, at the cost of appellant