Opinion by
 

 Fine, J.,
 

 On September 16, 1946, the husband-libellant filed his action for divorce on the ground of indignities. About ten months later, July 8, 1948, the master, after taking-326 pages of testimony at eight hearings, filed an exhaustive report, consisting of fifty-seven pages, wherein he recommended a decree be granted. The court below dismissed the exceptions to the master’s report and awarded the divorce. The decree will be affirmed.
 

 The parties were residents of Philadelphia at the time of their marriage on April 9, 1923, and there they continued to reside together until their separation on September 7, 1946. Two children were born of the marriage,—a son, aged nineteen years, living with the father, and a daughter, aged ten years, residing with the mother. The husband, aged fifty-eight years, is fourteen years older than his wife.
 

 The testimony in support of the libel is to the effect that the wife ignored her husband to his embarrassment; that she frequently quarrelled with him and repeatedly called him vile and profane names; that they had no sexual relations for ten years; that she ridiculed any amorous advances by him with name-calling and by scratching him; that she chided him in the presence of the children and stated to them that their father, the libellant, was a bum and a drunkard; that she threatened to kill him on several occasions; that she was very friendly with one Sclecky who visited libellant’s house when the latter was absent; that despite his objections his wife permitted one Hance to visit their home when libellant was working; that on one occasion when libellant entered the home he found Hance with his pants unbuttoned and he, the libellant, immediately and peremptorily ordered him to leave; that on a subsequent
 
 *299
 
 occasion she was seen with Hance in a park; that her relationships with other men were of a character to provoke the protestations of the husband; that when he remonstrated she retorted with unkind epithets or slapped his face; and, that she often told him she did not love him. Libellant stated he could not further undergo her treatment nor submit to her course of conduct any longer; that he was afraid of his wife and was compelled to leave her. Two neighbors testifying in libellant’s behalf stated they very frequently heard loud quarrelsome voices emanating from his home and that the respondent “sounded very angry and mad.” The witnesses ivere unable to determine the cause or nature of those apparent quarrels which were pursued in the Polish language. The son testified there was “trouble” in the home almost all of the time; that the mother threw things at the father, that she struck him once with a tumbler and on other occasions struck him with her fists; that she told him to leave; and that she deliberately and repeatedly ridiculed and humiliated him.
 

 The respondent denied all indignities. The testimony of respondent’s witnesses appears vague and lacks the persuasive force to shake in the slightest degree the testimony adduced by the libellant. The court below in its summation of the testimony stated: “The Master states that from his observation of the witnesses for both parties, he believes that the testimony of the libellant and his witnesses are more credible. With him, we agree. The Master had the advantage of seeing them and his analysis of the testimony is careful, fair and searching.” As stated in
 
 Smith v. Smith,
 
 157 Pa. Superior Ct. 582, 583, 43 A. 2d 371: “Although we are not concluded by a master’s findings upon credibility, his judgment upon that vital factor is entitled to the fullest consideration, Lyons v. Lyons, 116 Pa. Superior Ct. 385, 176 A. 792, and especially in a contested case. Fullwood v. Full-
 
 *300
 
 wood, 156 Pa. Superior Ct. 409, 40 A. 2d 876. He possesses an advantage not granted to us. He sees the parties and their witnesses face to face and observes their appearance and demeanor as they testify. We are restricted to the cold type of the record from which temperament and personality have been subtracted. Yet the demeanor of witnesses is the very touchstone of credibility; in the absence of reactions produced by other applicable tests, the appearance and demeanor of witnesses are the litmus by which the presence of truth is revealed.”
 

 The fundamental characteristics and very essence of indignities are that they must consist of a course of conduct or treatment which by its continuity renders the condition of the innocent party intolerable and his or her life burdensome.
 
 Monaco v. Monaco,
 
 160 Pa. Superior Ct. 117, 118, 50 A. 2d 520, 521. The record shows that the libellant was an innocent and injured spouse, who has met his burden of proving, by clear and convincing evidence, such a course of conduct by his wife as to entitle him to a divorce on the ground of indignities:
 
 Breene v. Breene,
 
 76 Pa. Superior Ct. 568;
 
 Golden v. Golden,
 
 134 Pa. Superior Ct. 211, 3 A. 2d 941;
 
 Fishman v. Fishman,
 
 134 Pa. Superior Ct. 217, 4 A. 2d 543.
 

 Decree affirmed.